IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:14-CR-124 |
| v. | ) | |
| | ) | |
| WALTER BLANKENSHIP, ET AL, | ) | (REEVES / SHIRLEY) |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

All pretrial motions in this case have been referred to the undersigned pursuant to

28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the

District Court as may be appropriate.  This case came before the undersigned on May 12, 2015,

for a motion hearing on all pending pretrial motions, including the following motions addressed

in this Memorandum and Order:

> (1) Defendants' Joint Motion to Distribute Juror Questionnaire [Doc. 59];
>
> (2) Defendants' Joint Motion for Specific Designation of Evidence the Government Intends to Use in its Case-in-chief [Doc. 60]; and
>
> (3) Defendants' Joint Motion for a Witness List [Doc. 66];

all of which were filed on April 3, 2015.[1]  Assistant United States Attorneys Frank M. Dale, Jr.,

and Jennifer Kolman appeared on behalf of the Government.   The following defense counsel

---

[1] The Court also heard oral argument on Defendants' Joint Motion to Dismiss Based Upon the Unconstitutional Vagueness of the Statute as Applied to Medical Practitioners Prescribing Controlled Substances [Doc. 62].  On July 3, 2015, the Defendants filed a Joint Motion to Dismiss the Indictment as Unconstitutional Pursuant to *Gonzales v. Oregon* and Other Authorities [Doc. 88].  The Defendants state that this second motion "raises some of the same issues presented by th[e] previously filed motion but includes additional authorities and raises additional grounds[.]"  [Doc. 88, p.1 n.1]  The Government's deadline for responding to the

were present: Attorney Amanda Tauber representing Defendant Walter David Blankenship; Attorney Keith D. Stewart representing Defendant David Eric Brickhouse; Attorney David M. Eldridge representing Defendant Jamie Chiles Cordes; Attorney M. Jeffrey Witt representing Defendant Sherry Ann Fetzer; Attorney John E. Eldridge representing James Brian Joyner; Attorney Charles C. Burks, Jr., representing Buffy Rene Kirkland; Attorney Kimberly A. Parton representing Defendant Don Robert Lewis, Jr.; Attorney Karmen L. Waters representing Donna Jeanne Smith; and Attorney Cullen Michael Wojcik representing Defendant Deborah Gayle Thomas. Defendants Cordes, Lewis, and Smith were also present for the hearing.

The Court heard the arguments of counsel and permitted the Defendants to file supplemental briefs by May 20, 2015, with regard to the motion for special designation of evidence. The Government was permitted to file a supplemental response to the Defendants' supplemental brief on or before May 27, 2015. The Court directed the parties to submit an agreed proposed juror questionnaire and to suggest a process for submitting the questionnaire to the prospective jurors by July 3, 2015. The supplemental filings [Docs. 78 and 79] on the motion for specific designation of evidence are now before the Court. However, the parties have not filed anything further with regard to the proposed prospective juror questionnaire.

Based upon the Court's review of the parties' arguments, the relevant case law, and the exhibits, the Court concludes that the request for a juror questionnaire should be **DENIED as moot**, without prejudice to refile, and that the Defendants' joint requests for specific designation of evidence and for a witness list should be **DENIED**.

---

second motion to dismiss is July 31, 2015. The Court finds that the issues with regard to the motions to dismiss the Indictment in this case are not yet ripe for determination.

# I. JUROR QUESTIONNAIRE

The Defendants ask the Court to distribute a juror questionnaire to all potential jurors prior to voir dire in this case. They contend that a juror questionnaire will help insure the selection of a competent, unbiased, and impartial jury by preventing potential jurors from tainting the jury pool with their responses to voir dire. The Defendants propose to create a questionnaire, share it with the Government, and then work together to create a final questionnaire that will be acceptable to both sides. The Government responds [Doc. 71] that it does not object to the Defendants' request.

At the May 12 hearing, Attorney John Eldridge, arguing on behalf of the Defendants, proposed calling the venire in early to fill out the questionnaires so that all counsel could have the questionnaires to review two weeks before trial. He stated that defense counsel and the Government's attorneys would work together to prepare a proposed questionnaire. AUSA Dale said that while a jury questionnaire seemed like a good idea to him, he believed the potential jurors could fill out the questionnaires on the day the Court was empanelling the jury, giving counsel an hour or so to review the completed questionnaires before voir dire. He stated that this procedure would better accommodate the schedules of the potential jurors. The undersigned agreed to hold the motion in abeyance to allow the parties to submit both a proposed questionnaire and a proposed procedure for distributing the questionnaire by July 3, 2015.

To date, the Court has received no proposed questionnaire or distribution procedure from the parties. Accordingly, the Court concludes that the parties are no longer seeking a juror questionnaire. Moreover, even if the parties are still seeking a juror questionnaire, the Court cannot rule on the propriety of questions to the jurors or make any assessment of how long it might take prospective jurors to complete the questionnaire in the absence of an actual questionnaire. For these reasons, the Defendants' Joint Motion to Distribute

3

Juror Questionnaire [**Doc. 59**] is **DENIED as moot**, without prejudice to refile the motion with a proposed juror questionnaire and distribution procedure attached by no later than *one month before trial*.[2] In so holding, the Court observes that it is disinclined to call potential jurors in before the day of trial to complete a juror questionnaire.

## II. SPECIFIC DESIGNATION OF THE GOVERNMENT'S PROOF AT TRIAL

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E), the Defendants ask [Doc. 60] the Court to order the Government to designate those specific items produced in discovery that it intends to refer to or offer in its case-in-chief at trial. The Defendants state that the discovery in this case is voluminous and involves over eighty (80) gigabytes of electronic discovery, which includes 2400 medical files. Additionally, the Defendants assert that over 800 medical files produced in discovery are not in electronic format. They argue that, in complex cases such as this one, the right to due process of law under the Fifth Amendment and to a fair trial under the Sixth Amendment require that the Government specifically designate that evidence, which it will present at trial.

The Government responds [Doc. 72] in opposition to this request, contending that no legal or factual basis exists for requiring it to identify in advance the documents and materials it intends to use at trial and that such an order would be unduly prejudicial to the Government. The Government states that it has complied with Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure by making available to the Defendants the items that are material to the Defendant's defense, the items that it intends to use in its case in chief, and the items that were taken from or belong to the Defendants. It maintains that requiring pretrial designation of its

---

[2] The trial is presently scheduled for October 6, 2015, but the Defendants have filed a Second Joint Motion to Continue Trial Date and All Associated Deadlines [Doc. 87], to which the Government has responded [Doc. 105] that it has no objection.

4

proof at trial will not actually benefit the Defendants, because it intends to have its witnesses "refer to" the patient files as a group, but will prejudice the Government by giving the Defendants a preview of the Government's case. The Government states that the solution to the voluminous discovery is simply doing what has already been done in this case, which is giving defense counsel a lengthy pretrial period in which to review discovery and prepare for trial.

At the May 12 hearing, defense counsel argued that the discovery in this case was so voluminous that, unless the Government designated which evidence it would use at trial, they would not be able to provide the effective assistance of counsel to their clients. Mr. David Eldridge stated that discovery consisted of eighty (80) gigabytes of data and that one gigabyte of data is the equivalent of 64,000 hardcopy pages or 15,000 digital pages. He suggested that to avoid requiring the Government to disclose its work product, the Court could order the Government to designate those items of evidence that it would *not* seek to introduce at trial. He agreed that the Government had already disclosed that it would not use some 800 medical files at trial. Mr. Wojcik argued that some of the files were over four years old and that it was not necessarily easier for the Defendants to review them than the Government, because of the time that has elapsed since they were created. Mr. Stewart added that because each Defendant was responsible for all the files, he had to review files that his client did not touch in the thirty-seven days he worked at the clinic. He asked the Court to order the Government to limit this overwhelming universe of information to the percentage of the medical files that it would seek to introduce at trial.

AUSA Dale argued that the Government had gone to great lengths to provide the Defendants with all discovery in this case, plus information from the Kincaid case[3] to provide

---

[3] In <u>United States v. Sandra Kincaid, et al</u>, 3:10-CR-160, the Government prosecuted the owners and operators of Breakthrough Pain Therapy Center, which is the pain clinic at issue in this case.

context. AUSA Kolman stated that the Government provided defense counsel with a DOMEX report, which outlines the Government's case against the Defendants, along with the raw data on which the DOMEX report was based. AUSA Kolman stated that the Government has already narrowed by fifty percent the universe of patient files that will it will present at trial,[4] and now the Defendants are demanding that it do more. AUSA Dale argued that identifying the patient files that the Government will present at trial would, in essence, be providing the Defendants with a witness list. He said that identifying witnesses in a drug case such as this one is problematic, because the patients, many of whom are incarcerated, are subject to intimidation. Additionally, AUSA Dale stated that the Government intended to "use" all the patient files included in the DOMEX report because its expert would refer to all of these files in drawing conclusions. Finally, Mr. Dale contended that to require the Government to designate its evidence pretrial would be "breaking new ground," by exceeding the requirements of the Federal Rules of Criminal Procedure, and proceeding in a direction that many courts have rejected.

During the hearing, the Court observed that while it was sympathetic to the Defendants' plight, ordering the Government to designate, or at least limit, the evidence it would present at trial without revealing its work product would be a challenge. The Court also observed that if it required the Government to designate its evidence before trial, the same would be required for the Defendants. The Court permitted defense counsel to file a supplemental brief providing the specific language the Defendants proposed the Court use to order the Government to designate the evidence it would introduce at trial. It also allowed the Government to respond to this supplemental brief.

On May 20, 2015, the Defendants filed a joint Supplemental Memorandum in Support of Defendant's Joint Motion for Specific Designation of Evidence the Government

---

[4] AUSA Kolman stated that the DOMEX report covers 915 of 1902 patient files.

Intends to Use in It[s] Case-in-chief [Doc. 78]. The Defendants argue that unless the Government designates more specifically within the "massive universe of discovery" that evidence it will introduce at trial, the Defendants (and the CJA fund) "will incur significant and unnecessary costs" from counsel reviewing that discovery that will not be used at trial. The Defendants acknowledge that the Government has informally designated some evidence that it does not intend to use at trial, such as the evidence seized from the Kincaids' house and the medical files that have not been converted to a digital format. Furthermore, the Defendants clarified that they are not requesting that the Government narrow the universe of patient files that are included in its summary reports. However, the Defendants contend that the Government's provision of the DOMEX report and the corresponding raw data does not render their motion moot, because a vast amount of discovery still exists.

With regard to the specific language the Court should employ in ordering the Government to designate that evidence that it intends to use in its case-in-chief at trial, the Defendants suggest the following:

(1) The Government must designate those documents which it intends to offer, or to refer to, in connection with the testimony of any witness during its case-in-chief.

(2) Alternatively, the Government may choose to designate those documents provided in discovery that it will *not* offer, or refer to, in connection with the testimony of any witness during its case-in-chief.

(3) If, after making this designation of evidence, the Government decides to offer or refer to any document that has not been included in its prior designation, the Government should promptly identify that document to the Defendants.

(4) The Government's duty to designate documents that it will use or refer to in its case-in-chief at trial does not include all documents that a witness may have reviewed or any documents used to refresh the witness's recollection at trial, provided the use of that document was not planned in advance.

7

The Government responds [Doc. 79] that the Defendants have failed to provide any specific, workable language for the designation of evidence. It argues that two problems would come from ordering it to designate the evidence it intends to use in its case in chief: First, designation of those documents or patient files that a witness "referred to" would essentially be meaningless for expert witnesses who relied on all the files to draw conclusions. Second, if the Government chose to designate negatively, i.e., to list those documents or files that it did not intend to use at trial, it would violate the Court's order, if it later chose not to put on some proof that it had previously designated. Finally, the Government again argues that it has gone to great lengths to scan 915 patient files into electronic format, to provide the Defendants with detailed analytical reports (the DOMEX reports), to provide the raw data on which the reports were based, and to give the precise location of all facts contained in the reports.[5] The Government contends that the instant Defendants have been given eleven months to review the discovery and to prepare for trial. The Government argues that there is no reason why defense counsel should not be able to prepare for trial in that time, particularly with the assistance of the DOMEX reports, which tell them precisely where particular information can be found.

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires the government to allow the defendant to "inspect and copy or photograph books, papers, documents, data, photographs, tangible objects, buildings, or places, copies or portions of any of

---

[5] To illustrate its point about the nature and detail of the information provided to the Defendants, the Government has provided the Court with a copy of the disk containing the DOMEX report that was provided to the Defendants in discovery. The Court has briefly reviewed this disk *in camera* and now returns it to the Government. The Court observes that this disk does not comply with the rules for redacting or protecting the personal identifiers of third parties, see Fed. R. Crim. P. 49.1(a), because it contains the full dates of birth of hundreds of individuals. Accordingly, the Court declines to make this disk an exhibit in the record.

8

these items" if the government has custody or control over the item and the item falls within one of the following three categories:

> (i)     the item is material to preparing the defense;
>
> (ii)    the government intends to use the item in its case-in-chief at trial; or
>
> (iii)   the item was obtained from or belongs to the defendant.

In the instant case, the Government has provided voluminous discovery that falls into one or more these three categories. The Defendants ask the Court to order the Government now to designate that subset of evidence provided in discovery that falls within the second of these categories, the evidence the Government intends to use in its case-in-chief at trial. In this respect, the Defendants argue that the universe of potential evidence that each of them must be prepared to meet at trial is so huge, that counsel cannot hope to prepare to meet it adequately and effectively.[6] Thus, the Defendants maintain that for them to have any hope of having a fair trial, the Government must narrow this universe of potential evidence either by designating that proof it will introduce or refer to through the testimony of any witness or by designating that evidence that it will not seek to introduce or refer to through witness testimony at trial. In other words, the Defendants ask that the Government be required to show them the needles of proof in of the looming discovery haystack or, at least, to sift out some of the straw to make a smaller haystack in which the Defendants have a better chance of locating the needles themselves. The

---

[6] For purposes of this motion, the Court examines whether the Government should designate its trial proof so that the Defendants do not have to be prepared to meet the entirety of discovery at trial. This motion is not about whether the Government has complied with its discovery obligations. The Court assumes that it has. Nor is it about whether defense counsel should have to review all of the discovery before trial in order to provide the effective assistance of counsel. The Court will assume that defense counsel will have *reviewed* all discovery pertinent to their client prior to trial. The issue before the Court is whether the Government should have to designate that part of the total discovery that it will offer at trial, so that the Defendants can be prepared to address those patient files, witnesses, etc., in greater detail or with more specificity than they could realistically employ if they had to be prepared to address all of discovery.

Government strenuously opposes either a positive or a negative designation of its proof, arguing in essence that it's not required, it's not practical, and it's not fair.

Despite its concerns over the sheer volume of discovery in this case, the Court must acknowledge that the Government is correct that specific designation of that evidence that the Government will use in its case-in-chief at trial is not required by Rule 16 or the case law. The Court of Appeals for the Sixth Circuit has expressly held that "[t]he discovery afforded by Rule 16 is limited to the evidence referred to in its express provisions." United States v. Presser, 844 F.2d 1275, 1285 (6th Cir. 1988). Neither Rule 16 nor the Due Process clause of the Fifth Amendment require the government to designate that discovery that relates to a particular defendant or count of an indictment. United States v. Warshak, 631 F.3d 266, 296 (6th Cir. 2010) (rejecting an argument that the government direct a defendant to exculpatory evidence within the total discovery provided). Even when discovery is voluminous, the government has no duty to isolate the particular items or documents that are relevant to each count of an indictment. See United States v. Richards, 659 F.3d 527, 543-44 (6th Cir. 2011), cert. denied, 132 S. Ct. 2726 (2012). While Rule 16 provides what should be disclosed, it does not speak to the form that the disclosure should take. See Warshak, 631 F.3d at 296 (observing that Fed. R. Crim. P. 16 does not require that discovery be indexed or organized in a specific way).

Moreover, even beyond requesting that the Government designate or pinpoint that evidence within the universe of discovery that relates to each of the Defendants particularly (i.e., which patients does the Government contend that each Defendant saw), the instant Defendants seek a sort of reverse-Brady designation: The Defendants want the Government to disclose that evidence which is most *inculpatory* to each of them or that evidence which the Government believes proves their guilt beyond a reasonable doubt. Such a designation necessarily impinges

10

upon the work product of counsel for the United States. It is well-settled that attorney work product is ordinarily protected from discovery by the opposing party:

> Opinion work product is any material reflecting the attorney's mental impressions, opinions, conclusions, judgments or legal theories. Hickman[v. Taylor], 329 U.S. [495,] 511 [(1947)]; Upjohn[Co. v. United States], 449 U.S. [383,] 399 [(1981)]; In re Special September 1978 Grand Jury, 640 F.2d [49,] 63 [(7th Cir. 1980)]; In re Sealed Case, 676 F.2d [793,] 809–10 [(D.C. Cir. 1982)]. The [Supreme] Court in Hickman observed that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." 329 U.S. at 510 . . . . One court has interpreted Hickman as giving opinion work product nearly absolute immunity. In re Murphy, 560 F.2d [326,] 336 [(8th Cir. 1977)].

In re Antitrust Grand Jury, 805 F.2d 155, 163-64 (6th Cir. 1986). "The work product doctrine clearly applies to the work produced by government attorneys in anticipation of litigation." United States v. Leggett & Platt, Inc., 542 F.2d 655, 660 n.6 (6th Cir. 1976); see also Fed. R. Crim. P. 16(a)(2) (providing that the Government is not required to disclose "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case"); United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993) (holding that a bill of particulars is not a means to discover the government's evidence and trial theories). Thus, the specific designation of that evidence that the Government will use in its case-in-chief at trial is not required as a general rule.

The Defendants contend that even though the requested designation is not required by law, the Court has the discretion to order the Government to provide such designation in unusual cases, such as this one, in which the failure to so designate works a particular hardship upon the Defendants. Even in holding that Rule 16 does not allow for discovery beyond its scope, our appellate court has noted that a trial court may have some inherent power to enter specific orders compelling the disclosure of specific evidence when

11

justice requires it, although it may not disregard specific statutory provisions such as the Jencks Act. Presser, 844 F.2d at 1285 n.12; see Richards, 659 F.3d at 543 (maintaining that it is within the court's discretion and inherent powers to regulate discovery); Rhodes v. McDaniel, 945 F.2d 117, 119 (6th Cir. 1991) (observing that "[t]he district court has broad discretion in regulating discovery"); see also United States v. Kendricks, 623 F.2d 1165, 1168 (6th Cir. 1980) (holding that the district court has the discretion to order the prosecution to produce a witness list). Certainly, judges in this district and others have recognized and employed such an inherent power. See United States v. Hill, No. 3:92-CR-132, at *6 (E.D. Tenn. Feb. 3, 1993) (Memorandum & Order) (Murrian, J.) (ordering that "the Government shall identify with greater specificity those documents among the thousands of documents previously produced for inspection and copying in this case which it intends to offer, or to refer to, in connection with the testimony of any witness during its case-in-chief").[7] Thus, the Court finds that it has the inherent power to order the government to designate the evidence that it will introduce in its case-in-chief when justice so requires.

The question becomes does justice require the specific designation of the Government's evidence in this case. The undersigned finds that it does not because the

---

[7] See also United States v. Beard, No. 1:04-CR-20, at *1 (M.D. Tenn. March 4, 2004) (Order) (Higgins, J.) (providing "the United States shall file and furnish the defendant's attorneys an exhibit list of the exhibits intended to be offered in the Government's case in chief"); United States v. Laughlin, 768 F. Supp. 957, 967 (N.D.N.Y. 1991) (ordering the Government to "identif[y] for defendant's review those specific documents that it intends to use as evidence in chief at trial"); United States v. Poindexter, 727 F. Supp. 1470, 1484 (D.D.C. 1989) (directing that "[w]ithin thirty days of the issuance of this Order, the government shall identify with greater specificity those among these thousands of documents in the financial, calendar, and diary areas that it intends to use at trial."); United States v. Turkish, 458 F. Supp. 874, 882 (S.D.N.Y. 1978) (directing the Government to "identify to the defendants those documents which it intends to offer, or to use or refer to in connection with the testimony of any witness in its case-in-chief"). But see United States v. Nachamie, 91 F. Supp. 2d 565, 570 (S.D.N.Y. 2000) (determining that the court lacked the authority to order the government to designate that discovery that it would use at trial because Rule 16 does not require it and "a court has no license to rewrite the Federal Rules of Criminal Procedure").

12

Government has already knocked the discovery haystack down to size, so to speak, by voluntarily designating the universe of patient files that it will present at trial and by informally excluding some discovery that it will not present at trial. In the instant case, the Government has provided the DOMEX report, which summarizes and analyzes the 915 patient files that it will rely on at trial. The Government has also significantly narrowed the universe of potential evidence that it will present at trial by informing defense counsel that it will not use the 800 some patient files that it did not provide in electronic format. Finally, the Government has indicated that it provided the Defendants with the evidence seized from the Kincaids' home to provide context for this case and that it does not anticipate introducing that evidence at trial.

Additionally, the Court finds that early disclosure of the Government's expert witnesses and their opinions and analyses will aid the Defendants in preparing for trial. In this case, the Court required [Doc. 52] that the Government disclose its experts pursuant to 16(a)(1)(G) on June 26, 2015. Rule 16(a)(1)(G) requires that the Government provide a written summary of the expert witness's testimony, which "describes the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Although such expert disclosures are typically provided three weeks before trial [see Order on Discovery and Scheduling, Doc. 8, ¶L], here the Government has provided these disclosures more than three months before trial. This information should also assist the Defendants in winnowing through discovery in preparation for trial.

In addition to this partial "self-designation" and early disclosure or expert opinion, the Court finds that another aspect of this case argues against requiring a formal designation of evidence. Due to the nature of this case, requiring the Government to designate the precise patient files that it will present at trial would essentially be requiring it to present a witness list, an issue that the Court addresses in part III below. Not only is the required

13

provision of a witness list in a criminal case a rare remedy, the Government contends that the potential witnesses in this case—patients at a "pill mill"—are particularly susceptible to intimidation. For the reasons discussed in section III below, that consequence argues against pretrial designation of the Government's proof. For these reasons, the Court finds that justice does not compel the pretrial designation of evidence in this case, even though the case is complex and the discovery is voluminous.

Finally, the Court comments briefly on the "fairness" of requiring the Government to tip its hand pretrial. The undersigned observes that it is the purpose of the Rules of Criminal Procedure is to insure the fair and just determination of criminal cases. Fed. R. Crim. P. 2 (providing that "[t]hese rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration and to eliminate unjustifiable expense and delay"). Moreover, it is the duty of the prosecutor to seek the truth, rather than to doggedly pursue a conviction:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Berger v. United States, 295 U.S. 78, 88 (1935).

On the other hand, the American system of criminal justice is premised on the belief that truth is best achieved in an adversarial system, in which each side determines and presents its best case. See Herring v. New York, 422 U.S. 853, 862 (1975) (observing that the "very premise

of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free"). The high stakes for the criminal defendant are balanced by the high burden of proof shouldered by the government and the judicious protection of the defendant's constitutional rights. Whether a court should exercise its discretion to order the government to designate the evidence it will produce at trial in advance of trial does not turn solely on the sheer volume of the discovery or the complexity of the case,[8] although those characteristics are indeed factors for the court to consider. Instead, the Court's discretion should be exercised in those few cases in which some unusual feature of the case prevents or hinders the system from arriving at the truth in the ordinary course. The Court does not find the instant case to be that case. The Defendants' Joint Motion for Specific Designation of Evidence the Government Intends to Use in its Case-in-Chief [**Doc. 60**] is **DENIED**.

### III.     WITNESS LIST

Finally, the Defendants move [Doc. 66] the Court to order the Government to provide them with a list of its witnesses at least thirty days before trial. In support of this request, the Defendants contend that there are around 1000 potential fact witnesses in this case.[9]

---

[8] The Court is cognizant of the fact that there are eighty gigabytes of discovery in this case as compared to the fourteen banker's boxes of discovery in the Hill case, in which Judge Murrian ordered the Government to designate its proof at trial. However, in this case, the Defendants have the benefit of discovery in an electronic format. The way that discovery is accessed, reviewed, searched, and stored today is vastly different than it was when Hill was decided in 1993 (or Turkish in 1978 or Poindexter in 1989). Moreover, the Court does not find that a universe of 915 patient files is so voluminous as to preclude defense counsel from reviewing them and sorting them by their respective relevance to his or her client, which is something the Court presumes counsel will do of his or her own accord. See fnt 6 above.

[9] In their motion, the Defendants state that the Government has provided over forty (40) interview reports of potential fact witnesses as well as 2000 patient files, each of which represents a potential fact witness. At the May 12 hearing, defense counsel acknowledged that

They argue that the vast number of potential fact witnesses in this case, the time period over which the conspiracy is alleged to have occurred, the need for timely trial preparation, and the limited resources of the Defendants warrant the Court in exercising its inherent power to order a witness list in this case. Moreover, they argue that provision of a witness list will not cause any risk or prejudice to the Government or its witnesses because the Defendants are licensed medical professionals with no criminal history and are all released pending trial, at the recommendation of the Pretrial Services Officer and the agreement of the Government.

The Government responds [Doc. 74] that the Defendants fail to offer any legal or factual reason that this case is unique or that compels the disclosure of witnesses in this case. It notes that although the charges are allegedly for nonviolent offenses, the risk of witness intimidation remains present. At the May 12 hearing, AUSA Dale argued that the patients of Breakthrough Pain Therapy Center are particularly susceptible to intimidation because many are incarcerated and/or reluctant to talk about the facts of this case. AUSA Dale also stated that the Defendants would know the witnesses the Government intended to call shortly before trial because they would be named in voir dire.

At the May 12 hearing, Attorney Wojcik argued that this case was unique both in the extreme volume of discovery and potential witnesses and because the Defendants are not the typical criminal defendants, but are licensed medical professionals without criminal records. He asked the Court to order the production of a witness list at least thirty days before trial, contending that if this case did not qualify for such relief, no case would. Attorney Burks pointed out that the allegations in this case were from 2009 and 2010. He argued that while the Government had interviewed potential witnesses closer to that time frame, the Defendants would have difficulty finding these former patients some five years later. He argued that disclosure of

the Government had limited the universe of patient files that it would use at trial to the 915 files in the DOMEX report.

16

the Government's witnesses during voir dire would not provide sufficient time for defense counsel to develop a defense and locate witnesses they might want to call. He asserted that disclosure of the Government's witness list would serve to level the playing field and prevent trial by ambush in this unique case.

As a general rule, the government is not required to disclose the names of its witnesses before trial. See United States v. Perkins, 994 F.2d 1184, 1190 (6th Cir.), cert. denied, 510 U.S. 903 (1993); United States v. McCullah, 745 F.2d 350, 353 (6th Cir. 1984); see also United States v. Turner, 91 F. App'x 489, 491 (6th Cir. 2004) (holding that a "defendant in a non-capital case . . . is not entitled to know in advance of trial who will testify for the government"). But see Roviaro v. United States, 353 U.S. 53, 60-64 (1957) (holding that the informer's privilege does not prevent the disclosure of the identity of active participants in the crime).[10] This rule is tempered by the government's obligation under Brady v. Maryland, 373 U.S. 83, 87 (1963), to provide the defendant with information that is favorable to his defense and material to either guilt or punishment. The government "acts at its own peril" if it fails to provide Brady materials in a timely fashion. United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988).

As discussed in section III above, the Court has discretion to order the Government to produce discovery not required by Federal Rule of Criminal Procedure 16, including a witness list, pursuant to its inherent powers. United States v. Kendricks, 623 F.2d 1165, 1168 (6th Cir. 1980) (holding that the district court has the discretion to order the prosecution to produce a witness list); Presser, 844 F.2d at 1285 n.12 (observing that "a trial court may have some inherent power to enter specific orders compelling the disclosure of

---

[10] The Court observes that the Defendants have recently filed a Joint Motion for Disclosure of the Confidential Informants [Doc. 96] in this case. The Government has not yet responded to this motion, and the Court has yet to hear argument on it. Accordingly, the Court will address the provision of a witness list generally at this time and reserve the issue of confidential informants for resolution in conjunction with the new motion.

17

specific evidence when justice requires it"); see also United States v. Powell, No. 12–20246, 2012 WL 6096600, *6 (E.D. Mich. Dec. 7, 2012) (observing that the district court has discretion to order the government to produce a witness list).

> As a general matter, courts weigh the interests of a defendant in receiving the witness list against the government's countervailing interest in keeping the witness information undisclosed. In balancing these interests, courts have considered the following factors: (i) whether disclosure of the witness list would expedite trial and facilitate docket control, see United States v. Jackson, 508 F.2d 1001, 1007 (7th Cir. 1975); (ii) whether disclosure would cause a security issue for the government witnesses, see United States v. Watson, 787 F.Supp.2d 667, 674–675 (E.D. Mich. 2011); (iii) the amount of time the defendant already had to research potential witnesses and prepare for investigation, see United States v. Williams, No. 06–CR–20411, 2010 WL 272082, at *2 (E.D. Mich. Jan. 15, 2010); and (iv) whether the government previously turned over information with the identities of government witnesses. See Watson, 787 F.Supp.2d at 674.

Powell, 2012WL6096600, at *6.  In exercising its discretion, the Defendants ask the Court to consider the following factors, gleaned from the case law in other circuits:  (1) whether the charged offense is a crime of violence; (2) whether the Defendants have a criminal history of crimes of violence; (3) whether provision of a witness list will realistically increase the likelihood that the Government's witnesses will not appear for trial or will be unwilling to testify; (4) whether the case is complex or difficult, including allegations of offenses occurring over an extended time period; and (5) whether investigation of numerous witnesses and trial preparation will strain the Defendants' limited resources.  See United States v. Washington, 947 F. Supp. 87, 89 (S.D.N.Y 1996); United States v. Turkish, 458 F. Supp. 874, 881 (S.D.N.Y. 1978).  These factors are designed to illuminate whether disclosure is both material to the preparation of the defense and reasonable in light of the circumstances of the case.  Washington, 947 F. Supp. at 89.

In the instant case, the reasons for disclosure are weighty:  The Defendants have not been charged with acting violently,[11] nor do they have any criminal history.  Moreover, the undersigned has already found [Doc. 46] that this case is unusually complex and difficult, given the volume of discovery and the novel legal issues involved.  Finally, disclosure of *all parties'* intended witnesses would serve to expedite the trial by eliminating requests for lengthy recesses for counsel to locate impeaching witnesses, etc.

On the other hand, the Government's reasons for not disclosing its witnesses outweigh the reasons supporting disclosure.  First and most significantly, the Court finds that the former pain clinic patients who make up the bulk of the potential witnesses in this case are particularly reluctant to testify.  The charges intimate that these patients were not legitimately seeking prescriptions for controlled substances, and their testimony may very well implicate them in crimes.  Because of this, the Court finds that they are more subject to intimidation, even unintentional intimidation, than the typical witness.

Secondly, the Court finds that the Government has not only provided the identities of the potential witnesses in discovery but, as discussed in part II. above, it has made great efforts to identify and narrow the universe of potential witnesses for the Defendants.  In addition to cutting the universe of potential witnesses in half, the Government has identified which patients with whom each Defendant is alleged to have met/prescribed controlled substances.  Thus, although the universe of potential witnesses is around 1000 people, each Defendant can prepare to cross-examine the subset of those patients for whom he or she prescribed controlled substances.

---

[11] The Government argued that the actions of the Defendants have contributed to more ruined lives than most traditional drug dealers could ever contemplate.  However, the Court finds that the purpose of this factor is to determine whether the Defendants would act with violence toward the potential witnesses, if they but knew who they are.  There is simply no indication that would occur in this case.  Similar to the situation in Powell, 2012 WL 6096600, *7, the Government has already turned over the names of all 1,000 potential witnesses in discovery and no untoward behavior toward potential witnesses has come to the Court's attention.

Third, defense counsel have been granted a lengthy time frame in which to investigate and interview potential witnesses. In early December 2014, the undersigned continued [Doc. 52] the trial of this case from December 15, 2014, to October 6, 2015. The Defendants have requested [Doc. 87] even more time to complete trial preparations, and the Government does not oppose [Doc. 105] this request. Finally, although the Defendants argue that investigation of this vast number of potential witnesses will strain their resources, the Court observes that, as referenced in the Defendants' Second Joint Motion to Continue the Trial Date, the Court has granted the Defendants' joint request for funding for investigative services.[12]

The Court finds that it should exercise its discretion to order the parties to disclose their witnesses significantly in advance of trial only in the rare and unusual case. While the Court finds this case is unusual in the total volume of discovery, the Court also finds that this case is unique in that the Defendants know the identities of the potential witnesses and have access to the facts (the patient files) about which these witnesses will testify. Given that the potential witnesses are particularly susceptible to intimidation, the Court finds that the balance shifts in favor of the Government on this issue. Accordingly, the Defendants' Joint Motion for a Witness List [**Doc. 66**] is **DENIED**. However, the Court continues to strongly encourage the Government to disclose Jencks Act materials—and in this case, the identities of its actual witnesses—as soon as possible and well before the testimony of those witnesses at trial. [See Order on Discovery and Scheduling, Doc. 8, ¶O]

---

[12] The Defendants state "CJA counsel have sought and received approval for investigative and document management resources to complete the review and distillation of this massive volume of discovery." [Doc. 87, p.3] The Court observes that these investigative services will benefit all the Defendants, not just those with appointed counsel.

# IV.    CONCLUSION

After careful consideration of the parties' briefs and arguments, the relevant case

law and procedural rules, and the competing equities in this case, the Court rules as follows:

(1) The Defendants' Joint Motion to Distribute Juror Questionnaire [**Doc. 59**] is **DENIED as moot**, without prejudice to refile the motion, with a proposed juror questionnaire and distribution procedure attached, by no later than *one month before trial*;

(2) The Defendants' Joint Motion for Specific Designation of Evidence the Government Intends to Use in its Case-in-Chief [**Doc. 60**] is **DENIED**; and

(3) The Defendants' Joint Motion for a Witness List [**Doc. 66**] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

21