FIN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:14-CR-124 |
| v. | ) | |
| | ) | |
| DAVID ERIC BRICKHOUSE, | ) | (REEVES / SHIRLEY) |
| JAMES BRIAN JOYNER, and | ) | |
| DEBORAH GAYLE THOMAS, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the undersigned on November 16, 2015, for a motion hearing on all pending pretrial motions, including the Defendants' two motions to dismiss the Indictment:

> (1) Defendants' Joint Motion to Dismiss Based Upon the Unconstitutional Vagueness of the Statute as Applied to Medical Practitioners Prescribing Controlled Substances [Doc. 62], filed on April 3, 2015,[1] and
>
> (2) Defendants' Joint Motion to Dismiss the Indictment as Unconstitutional Pursuant to *Gonzalez v. Oregon* and Other Authorities [Doc. 88], filed on July 3, 2015.

---

[1] The Court heard oral argument on Defendants' Joint Motion to Dismiss Based Upon the Unconstitutional Vagueness of the Statute as Applied to Medical Practitioners Prescribing Controlled Substances [Doc. 62] on May 12, 2015. The Court reserved ruling on this motion following the filing of the Joint Motion to Dismiss the Indictment as Unconstitutional Pursuant to *Gonzales v. Oregon* and Other Authorities [Doc. 88] because this motion states that it "raises some of the same issues presented by th[e] previously filed motion but includes additional authorities and raises additional grounds[.]" [Doc. 88, p.1 n.1]

Assistant United States Attorney Frank M. Dale, Jr., appeared on behalf of the Government. Attorneys Keith D. Stewart and Matthew D. Barocas represented Defendant David Eric Brickhouse. Attorney John E. Eldridge represented James Brian Joyner. Attorneys Cullen Michael Wojcik and Robert R. Kurtz represented Defendant Deborah Gayle Thomas. Defendants Brickhouse and Thomas were present for the hearing.

Based upon the Court's review of the parties' arguments and the relevant case law, the undersigned recommends that the Defendants' joint motions to dismiss the Indictment should be denied.

## I. POSITIONS OF THE PARTIES

The Defendants, medical doctors and physician's assistants, are charged [Doc. 3] with conspiracy to violate 21 U.S.C. § 841(a)(1) by intentionally or knowingly distributing Schedule II and IV controlled substances "by writing prescriptions for such controlled substances, which prescriptions were not issued for a legitimate medical purpose by an individual practitioner acting in the usual course of professional practice" (Count One). Count Two alleges that the Defendants conspired to commit money laundering. Section 841(a)(1) prohibits the unauthorized manufacture, distribution, dispensing, or possession with intent to manufacture, distribute, or dispense a controlled substance. As medical practitioners, the Defendants were authorized to prescribe controlled substances. However, the Government contends that the Defendants ran afoul of a regulation promulgated under the authority of 21 U.S.C. § 841. It contends that 21 C.F.R. § 1306.04(a) requires that a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of professional practice." The Indictment asserts that the Defendants violated §

841(a)(1) by writing prescriptions for controlled substances without a legitimate medical purpose and outside of the usual course of professional practice.

The Defendants ask the Court to dismiss Count One of the Indictment in this case because they argue that § 841(a)(1), as applied to physicians and physician's assistants, violates the First, Fifth, and Fourteenth Amendments to the United States Constitution. They contend that the statute violates their rights under the First Amendment because it "chills" their ability to make independent medical decisions in the furtherance of the best interest of their patients. They also argue that the statute violates the Due Process clause of the Fifth and Fourteenth Amendments because it is unconstitutionally vague as applied to medical practitioners. Additionally, the Defendants contend that the statute violates the Equal Protection Clause of the Fifth Amendment because the *mens rea* element of the statute is eliminated when the statute is applied to medical professionals. Moreover, they argue that only the State of Tennessee can determine whether the issuance of a particular prescription is for a legitimate medical purpose or made in the usual course of professional practice.

The Government responds [Docs. 73 & 118] that both Supreme Court and Sixth Circuit case law hold that § 841(a)(1), as applied to medical practitioners, is not void for vagueness.

## II. ANALYSIS

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury." U.S. Const. amend V. "The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general
3

rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling).

Count One of the instant Indictment charges the Defendants as follows:

> The Grand Jury charges that beginning in or about July, 2009, and continuing through on or about December 14, 2010, in the Eastern District of Tennessee, the defendants, . . . **DAVID ERIC BRICKHOUSE**, . . . **JAMES BRIAN JOYNER** , . . . **and DEBORAH GAYLE THOMAS**, did combine, conspire, confederate and agree with each other and other persons, known and unknown to the Grand Jury to commit violations of Title 21, United States Code, Section 841(a)(1), that is to knowingly, intentionally, and without authority, distribute a quantity of a mixture and substance containing a detectable amount of oxycodone (a Schedule II controlled substance), a quantity of a mixture and substance containing a detectable amount of morphine (a Schedule II controlled substance), a quantity of a mixture and substance containing a detectable amount of oxymorphone (a Schedule II controlled substance), a quantity of a mixture and substance containing a detectable amount of alprazolam (a Schedule IV controlled substance), by writing and issuing prescriptions for such controlled substances, which prescriptions were not issued for a legitimate medical purpose by an individual practitioner acting in the usual course of professional practice.
>
> [Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(C).]

[Doc. 3]

Title 21, United States Code § 841(a)(1) provides "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" Although certain licensed medical professionals are authorized to prescribe

4

Case 3:14-cr-00124-TAV-DCP Document 186 Filed 03/30/16 Page 4 of 16
PageID #: 1515

controlled substances, a " prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a).[2]

"There are two quite different ways in which a statute or ordinance may be considered invalid "on its face"—either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally "overbroad." Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 796 (1984). The Defendants, who are medical practitioners with the authority to prescribe controlled substances, argue that the application of § 841(a)(1) to them violates the First, Fifth, and Fourteenth Amendments of the United States Constitution. Thus, the Defendants, for the most part, contend that § 841(a)(1) is unconstitutionally vague "as applied" to them. Because the Defendant's arguments with regard to their First and Fourteenth Amendment claims stem from their Fifth Amendment vagueness challenge, the Court will first address whether § 841(a)(1) is facially vague in violation of the Fifth Amendment.

### A. Void for Vagueness

The Defendants contend that § 841(a)(1) is unconstitutionally void for vagueness as applied to medical practitioners with the authority to prescribe controlled substances. They argue that applying § 841(a)(1) to medical practitioners violates their Fifth Amendment right to

---

[2] "Every person who dispenses, or who proposes to dispense, any controlled substance, shall obtain from the Attorney General a registration issued in accordance with the rules and regulations promulgated by him." 21 U.S.C. § 822(a)(2). "Persons registered by the Attorney General under this subchapter to manufacture, distribute, or dispense controlled substances or list I chemicals are authorized to possess, manufacture, distribute, or dispense such substances or chemicals (including any such activity in the conduct of research) to the extent authorized by their registration and in conformity with the other provisions of this subchapter." 21 U.S.C. § 822(b). Thus, medical professionals authorized to issue prescriptions must do so in compliance with the regulations issued by the Attorney General.

5

Case 3:14-cr-00124-TAV-DCP   Document 186   Filed 03/30/16   Page 5 of 16
PageID #: 1516

the due process of law because the statute fails to provide a definite standard, which would give notice that a proposed course of conduct could result in criminal liability.  They also contend that the application of § 841(a)(1) to medical practitioners violates the equal protection of the law by eliminating the statute's requirement of an intentional or a knowing mental state.

*(1) Due Process*

The Defendants contend that § 841(a)(1) is vague as applied to medical practitioners because it fails to provide a definite standard by which practitioners can measure their conduct.  In order to avoid constitutional vagueness, a statute must define the criminal conduct with enough precision that it permits an ordinary person to understand what is prohibited and that it does not encourage arbitrary or discriminatory enforcement.  Kolender v. Lawson, 461 U.S. 352, 357 (1983).  To survive a vagueness challenge, a statute must give "relatively clear guidelines as to prohibited conduct."  Posters 'N' Things, Ltd. v. U.S., 511 U.S. 513, 525 (1994).  In this regard, the statute must provide "objective criteria" that will "minimize the possibility of arbitrary enforcement and assist in defining the sphere of prohibited conduct under the statute."  Id. at 526.  "The underlying principle [in a vagueness analysis] is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."  United States v. Harriss, 347 U.S. 612, 617 (1954).

The Defendants argue that courts have not defined a standard for prosecution of medical professionals under § 841(a)(1) with sufficient definiteness to satisfy due process.  They maintain that while the case law confirms that licensed medical practitioners are not exempt from prosecution for unlawful distribution under § 841(a)(1), the cases fail to set forth a standard that

would permit medical professionals to avoid engaging in prohibited conduct. See, e.g., United States v. Moore, 423 US. 122 (1975); United States v. August, 984 F.2d 705, 713 (6th Cir. 1992). Instead, the Defendants contend that, in this Circuit, "there are no specific guidelines" in determining whether a physician has acted outside the scope of professional practice, and the evidence must be analyzed on a case-by-case basis. August, 984 F.2d at 713. However, the Defendants argue that the Supreme Court has found similarly amorphous statutory standards that impose criminal penalties on doctors to be unconstitutionally vague. See Gonzalez v. Oregon, 546 U.S. 243 (2006); Colautti v. Franklin, 439 U.S. 379 (1979).

The Defendants rely on two Supreme Court decisions in support of their argument that the "outside the usual course of professional practice" standard is vague with regard to medical professionals exercising medical judgment. In Colautti v. Franklin, the Supreme Court examined a statute that imposed criminal liability on doctors who failed to use a certain abortion procedure if the fetus was "viable" or if the doctor had "sufficient reason to believe that the fetus may be viable." Id. at 381. The Supreme Court found the viability determination to be subjective and to involve "a complex medical judgment about which experts can—and do—disagree." Id. at 401. Accordingly, the Supreme Court found the statute's viability determination, along with a standard of care requiring the doctor to exercise a certain degree of professional skill, to be void for vagueness. Id. The Defendants argue that the instant regulation's requirement that the physician act "for a legitimate medical purpose" and "in the usual course of professional practice" to be similarly flawed. They maintain that the determination of whether to prescribe controlled substances to treat a particular patient is also a complex medical decision about which medical practitioners can differ.

In Gonzalez v. Oregon, the Supreme Court analyzed an interpretive rule issued by the United States Attorney General stating that doctors who assist terminally ill patients in committing suicide pursuant to an Oregon law do so in violation of the Controlled Substances Act. See 546 U.S. at 254. The Court held that although the Attorney General could determine compliance with the Act—both in deciding whether a physician can be/remain registered and in deciding whether to prosecute—the Attorney General cannot define what constitutes a legitimate medical purpose. Id. at 264, 268. Thus, the Attorney General's rule that controlled substances prescribed for the purpose of assisting the patient to commit suicide are not prescribed for a legitimate medical purpose exceeds the Attorney General's authority under the Act. Id. at 274-75.

Here, the Defendants argue that, like in Gonzalez, the Government infringes upon the medical practitioner's treatment by bringing charges against the practitioner when the Government determines that a prescription was not issued for a legitimate medical purpose. They contend that the State of Tennessee has determined that the treatment of chronic pain with opiates is legitimate and that the Government oversteps its authority when it determines that a prescription was not for a legitimate medical purpose. Moreover, the Defendants argue that the Government will not issue clear standards on what it deems to be a legitimate medical purpose or conduct within professional practice by which practitioners may measure their own conduct. As evidence of this, they point to the Department of Justice's withdrawal of guidelines issued by the Drug Enforcement Administration in "Prescription Pain Medications: Frequently Asked Questions and Answers for Health Care Professionals, and Law Enforcement Personnel." [Doc. 89-4]

The Defendants also contend that because the standard for criminal liability for medical professionals under § 841(a)(1) is vague, the statute has a high potential for arbitrary application and gives rise to an unacceptable level of prosecutorial discretion. They assert that reasonable minds can differ as to what constitutes a legitimate medical purpose and what is within the usual course of professional practice. The Defendants allege that because practitioners with a variety of philosophies practice medicine, it will be easy for the prosecution to find an expert who will testify that any given course of conduct was not for a legitimate medical purpose or fell outside the usual course of professional practice. Thus, they argue that the statute creates an unacceptable risk of arbitrary enforcement.

The Court disagrees that § 841(a)(1) and the regulation at § 1306.04 leave medical practitioners rudderless and adrift in the murky waters of criminal liability. First, the Supreme Court determined, over forty years ago, that doctors could be charged with violating § 841(a)(1), despite the fact that they are authorized to prescribe controlled substances. United States v. Moore, 423 U.S. 122 (1975). In Moore, the Court unanimously held that "registered physicians can be prosecuted under § 841 when their activities fall *outside the usual course of professional practice*" because "only the lawful acts of registrants are exempted." Id. at 124, 131 (emphasis added).[3] There, the Court upheld the application of the Controlled Substances Act to Defendant Moore, who prescribed methadone to patients in large amounts without an "adequate physical examination," directions for use, regulating the dosage, or taking precautions to prevent misuse or resell of the drug. Id. at 124. Dr. Moore also ignored test results and charged graduated fees based upon the amounts of drugs prescribed, rather than the services performed. Id. According

---

[3] In Moore, the Supreme Court observed that the Harrison Act of 1914, the act which preceded the Controlled Substances Act, also permitted the prosecution of "[p]hysicians who stepped outside the bounds of professional practice[.]" Id. at 132. Thus, the regulatory language the Defendants challenge as vague in the instant case has been applied to medical professionals for a century.

9

to the Supreme Court, "[i]n practical effect, he acted as a large scale 'pusher' not as a physician." Id.

Rather than defining which conduct is "for a legitimate medical purpose" and "in the usual course of professional practice," the Sixth Circuit has held that each case must be examined on its own facts:

> There are no specific guidelines concerning what is required to support a conclusion that an accused acted outside the usual course of professional practice. Rather, the courts must engage in a case-by-case analysis of evidence to determine whether a reasonable inference of guilt may be drawn from specific facts.

August, 984 F.2d at 713. The Defendants contend that this "we know it when we see it" approach forces doctors to refuse to prescribe scheduled drugs in order to avoid the possibility of criminal liability. According to the Defendants, the lack of a standard by which to judge their conduct presents medical professionals with a Hobson's choice: Either avoid prescribing controlled substances in order to steer clear of criminal liability and in so doing, risk a malpractice suit for insufficient or improper care, or properly treat their patients and risk violating § 841(a)(1). However, as the Government points out, the Sixth Circuit has upheld the application of § 841(a)(1) to medical professionals in the face of a vagueness challenge. United States v. DeBoer, 966 F.2d 1066, 1068-69 (6th Cir. 1992). In DeBoer, a pharmacy technician argued that his right to due process was violated by his prosecution under § 841(a)(1), which he contended was void for vagueness. Without equivocation, the appellate court held that "the language in § 841(a)(1) and 21 C.F.R. § 1306.04(a) clearly defines the pharmacist's responsibilities that give rise to conduct that constitutes an unlawful distribution of a prescription drug." Id. at 1069. The court determined that the evidence was sufficient to show "that the defendant acted outside the scope of his profession." Id.

The undersigned observes that the Sixth Circuit is not alone in rejecting a vagueness challenge such as the one made by the instant Defendants. The Fourth, Fifth, Eighth, Ninth, and Tenth Circuits join the Sixth Circuit in holding that § 841(a)(1), as applied to medical professionals authorized to prescribe and/or dispense controlled substances (or non-registrants acting in concert with registrants), is not unconstitutionally vague. United States v. Orta-Rosario, 469 F. App'x 140, 143-44 (4th Cir. 2012); United States v. Birbragher, 603 F.3d 478, 488 (8th Cir. 2010); United States v. Lovern, 590 F.3d 1095, 1103 (10th Cir. 2009) (holding that pharmacist who filled prescriptions from an online service involving no physical examination or consultation with a physician was not "the unwitting victim of a law he didn't understand"); United States v. Rosenberg, 515 F.2d 190, 197 (9th Cir. 1975) ("The language ['in the course of professional practice'] clearly means that a doctor is not exempt from the statute when he takes actions that he does not in good faith believe are for legitimate medical purposes"); United States v. Collier, 478 F.2d 268, 270–72 (5th Cir. 1973) (rejecting the contention § 841(a), as applied to doctors, is unconstitutionally vague). The Defendants do not raise, nor has the Court discovered, a case holding § 841(a)(1) to be vague as applied to registered medical professionals. See Birbragher, 603 F.3d at 488 (noting the absence of any authority finding § 841(a)(1) or § 1306.04 to be vague).

Additionally, the Court finds that the Supreme Court's decision in Gonzalez does not prohibit the application of the Controlled Substances Act to medical practitioners. In Gonzalez, the Supreme Court observed that it determined in United States v. Moore, that a doctor can be prosecuted under the Controlled Substances Act when he or she prescribes drugs mainly to make money, rather than to treat the patient. Gonzalez, 546 U.S. at 269. Moreover, the Supreme Court stated that the Attorney General has the authority to determine compliance with the

Controlled Substances Act in deciding whether to prosecute but does not have the authority to define what the Act means. Id. at 264. Thus, the Sixth Circuit has expressly rejected the contention that Gonzalez forecloses application of § 841(a)(1) to prescribing physicians and other medical professionals authorized to prescribe controlled substances. United States v. Volkman, 736 V.3d 1013, 1020 (6th Cir.), jmt vacated on other gnds Volkman v. United States, 135 S. Ct. 13 (2014) (vacating the doctor's convictions for unlawful distribution of controlled substances leading to death and remanding for consideration of the "but-for causation" standard). Our appellate court stated that "Gonzalez was decided in the setting of administrative law, not criminal law." Id. "Gonzales did nothing to alter the reality that ' "knowingly distributing prescriptions outside the course of professional practice is a sufficient condition to convict a defendant [physician] under the criminal statutes relating to controlled substances." ' " Id. (quoting United States v. Kanner, 603 F.3d 530, 535 8th Cir. 2010), in turn quoting United States v. Armstrong, 550 F.3d 382, 397 (5th Cir. 2008)). Furthermore, the Sixth Circuit affirmed its "broad," case-by-case approach to assessing whether a physician's conduct falls within the accepted bounds of professional practice in the wake of Gonzalez. Id.

Finally, the Court also finds that the Defendants' argument that the application of § 841(a)(1) to prescribing medical professionals is subject to arbitrary enforcement has little traction.

> By its terms, § 841(a)(1) creates a sweeping prohibition on distribution of controlled substances, subject to a relatively narrow exception for distribution within the usual scope of professional practice. That latter phrase has an objective meaning that prevents arbitrary prosecution and conviction: Neither the government nor the jury is free to impose its own subjective views about what is and is not appropriate; rather, the government is obliged to prove, and the jury constrained to determine, what the medical profession would generally do in the circumstances.

12

United States v. Quinones, 536 F. Supp.2d 267, 274 (E.D.N.Y. 2008). In this regard, the Court observes that the instant Defendants have argued [Doc. 44] to the undersigned that this case should be designated as complex for speedy trial purposes because of its novelty, as it is the first case in which medical professionals have been prosecuted under the Controlled Substances Act for prescribing controlled substances without a legitimate medical purpose and outside the bounds of the usual course of professional practice. Such a track record indicates a circumspect, rather than arbitrary, exercise of prosecutorial discretion with regard to medical professionals in this district.

The application of the relevant precedent unambiguously reveals that § 841(a)(1) is not unconstitutionally vague as applied to medical professionals authorized to prescribe controlled substances. The undersigned discerns no due process violation from the instant Indictment.

### B. Chilled Speech

The Defendants briefly argue that the application of § 841(a)(1) to medical practitioners with the authority to prescribe controlled substances violates the First Amendment, because it chills independent medical decisions. At the November 16 hearing, Attorney Stewart argued that application of the Controlled Substances Act to medical professionals chills the doctor-patient relationship. He contended that doctors and other professionals authorized to prescribe controlled substances are reluctant to do so when there are no express guidelines or standards to permit them to steer clear of illegal conduct. The Government responds that the Defendants have no constitutional right to engage in drug dealing.

Generally, the First Amendment protects a physician's medical advice to a patient. See Rust v. Sullivan, 500 U.S. 173, 200 (1991) (finding that the regulatory program did not impinge

13

significantly upon the doctor-patient relationship). Section 841(a)(1) does not restrict an authorized medical practitioner's right to prescribe controlled substances for legitimate medical purposes, nor does it prevent patients from obtaining controlled substances through an authorized medical practitioner acting within in the ordinary course of professional practice. Thus, the Defendants' First Amendment claim only makes sense if the Defendants are taking the untenable position that they should be allowed to prescribe controlled substances with no legitimate medical purpose and/or outside the bounds of the usual course of professional practice. The First Amendment does not protect speech that is "an integral part of conduct in violation of a valid criminal statute." Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 498 (1949).[4] In Pearson v. McCaffey, the district court for the District of Columbia held that "[t]he First Amendment does not prohibit the federal government from taking action against physicians whose prescription or recommendation of medicinal marijuana violates the CSA." 139 F. Supp. 2d 113, 121 (D.D.C. 2001). Thus, the Court does not find fault with the Indictment based upon a First Amendment analysis.

### C. Infringement of State Power

Finally, the Defendants contend that the determination of what constitutes a "legitimate medical purpose" and the "usual course of professional practice" can only be made by the State of Tennessee. Thus, they argue that the instant federal prosecution infringes upon Tennessee's

---

[4] Moreover, the prohibition of a doctor's prescribing controlled substances without a legitimate medical purpose and outside of the usual course of professional conduct is a regulation of speech incidental to the regulation of professional conduct. See National Association for Advancement of Psychoanalysis v. California Bd of Psychology, 228 F.3d 1043, 1053-54 (9th Cir. 2000) (observing that the "communication that occurs during psychoanalysis is entitled to constitutional protection, but it is not immune from regulation"); see also City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989) (holding that "[w]hile it is possible to find some kernel of expression in almost every activity a person undertakes . . . such a kernel is not sufficient to bring the activity within the protection of the First Amendment").

14

power to control medical practice within the state.  At the November 16 hearing, Mr. Stewart argued that medical professionals are told by the state that a certain standard of care is appropriate, or even required, but yet they can be prosecuted by the federal government for acting in compliance with that state standard.

The Tenth Amendment to the United States Constitution provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." It is well settled that Congress has the power to regulate the distribution of controlled substances under the Controlled Substances Act pursuant to its powers under the Commerce Clause.  United States v. Scales, 464 F.2d 371, 375 (6th Cir. 1972).  However, the Controlled Substance Act "explicitly contemplates a role for the States in regulating controlled substances" and only preempts state regulation when the state law in question conflicts with the Act such that the two cannot coexist.  Gonzalez, 546 U.S. at 250.  "The statute and our case law amply support the conclusion that Congress regulates medical practice insofar as it bars doctors from using their prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood.  Beyond this, however, the statute manifests no intent to regulate the practice of medicine generally." Id. at 269-70.  Thus, the Supreme Court has determined that the enforcement of the Controlled Substances Act to prevent illegal or illegitimate drug trafficking by registered medical professionals does not intrude upon the states' ability to regulate the practice of medicine in accordance with their police powers.

The Court discerns no due process violation in permitting the Government to prosecute registered medical professionals when they prescribe controlled substances outside of their statutory authority (i.e., outside the usual scope of professional practice) and do so without a

legitimate medical purpose.  "Congress could reasonably decide that in order to effectively regulate interstate commerce in drugs, it was necessary to insure that persons within legitimate distribution channels, including the dispensing physicians and pharmacists, did not divert drugs into the illicit market."  Collier, 478 F.2d at 273 (rejecting the defendant physician's Tenth Amendment challenge to the requirement that he prescribe drugs in the usual course of professional practice).  Thus, Congress's regulation of medical professionals under the Controlled Substances Act does not exceed its power under the Constitution.

### III. CONCLUSION

After carefully considering the parties' filings and arguments and the relevant legal authorities, the Court finds no basis to deem 21 U.S.C. § 841(a)(1) to be void for vagueness as applied to medical professionals authorized to prescribe controlled substances.  For the reasons set forth herein, it is **RECOMMENDED** that Defendants' joint motions [Docs. 62 & 88] to dismiss Count One of the Indictment be **DENIED**.[5]

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Fed. R. Crim. P. 59(b)(2) (as amended).  Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order).  The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general.  Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).