IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:14-CR-124 |
| v. | ) | |
| | ) | |
| JAMES BRIAN JOYNER, and | ) | (REEVES / SHIRLEY) |
| DEBORAH GAYLE THOMAS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

All pretrial motions in this case have been referred to the undersigned pursuant to

28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the

District Court as may be appropriate. This case came before the undersigned on November 16,

2015, for a motion hearing on the following pretrial motions:

(1) Defendants' Joint Motion to Exclude Unreliable Patient Files as
Testimonial Hearsay in Violation of the Confrontation Clause
[Doc. 90];

(2) Defendants' Joint Motion to Suppress Statements of Alleged Co-
conspirator or in Alternative Motion for a *Enright* Hearing [Doc.
92];

(3) Defendant's Joint Motion to Require the Identification of Known
but Unindicted Alleged Coconspirators [Doc. 94];

(4) Defendants' Joint Motion for Disclosure of the Confidential
Informant(s) [Doc. 96];

(5) Motion to Compel Disclosure of the Existence and Substance of
Promises of Immunity, Leniency, or Preferred Treatment [Doc.
141]; and

(6) Defendants' Joint Motion to Compel [Doc. 148].

Assistant United States Attorney Frank M. Dale, Jr., appeared for the motion hearing on behalf of the Government. Attorney John E. Eldridge represented James Brian Joyner. Attorneys Cullen Michael Wojcik and Robert R. Kurtz represented Defendant Deborah Gayle Thomas, who was also present for the hearing.[1] Following argument on the motions, the Court took the four motions to disclose evidence, the motion to exclude evidence, and the motion for a pretrial Enright hearing under advisement.

The undersigned now finds that the Government should disclose the identity of a confidential source. The motion to compel exculpatory evidence was withdrawn at the November 16 hearing. The remaining motions are denied.

## I. MOTIONS FOR DISCLOSURE OF EVIDENCE

The Defendants have moved the Court to order the Government to disclose the identity of unindicted coconspirators [Doc. 94]; the identity of confidential informants [Doc. 96]; information on promises of immunity, leniency, or preferred treatment [Doc. 141]; and potentially exculpatory evidence [Doc. 148]. The Court addresses each of these requests in turn.

---

[1] Attorneys Keith D. Stewart and Matthew D. Barocas represented Defendant David Eric Brickhouse, who was also present at the hearing. On April 25, 2016, the Government moved [Doc. 191] to dismiss Defendant Brickhouse from the case, due to his death on April 5, 2016. District Judge Reeves granted [Doc. 198] this motion and dismissed Defendant Brickhouse from the case on May 4, 2016.

2

## A.  Identification of Known but Unindicted Alleged Coconspirators [Doc. 94]

The Defendants ask the Court to order the Government to identify those people whom it contends are coconspirators but who are not indicted in this case.  Based upon their rights to due process and a fair trial, they argue that knowledge of the unindicted coconspirators is essential to their understanding of the charges, their right to confront the Government's witnesses, and their ability to prepare a defense.  They assert that the universe of potential coconspirators in this case includes the owners of Breakthrough Pain Therapy Center (BPTC), other BPTC employees, and all of the patients at BPTC.  They argue that it is unfair to put them to trial on such a broad conspiracy charge without giving them notice of the individuals with whom they are alleged to have conspired.

The Government responds [Doc. 121] that the Defendant's request is inconsistent with case law in this Circuit and should be denied.  The Government is not required to provide the names of unindicted coconspirators to defendants.  United States v. Crayton, 357 F.3d 560, 568 (6th Cir. 2004); United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. 1991).  The Government points out that this Court has consistently applied this rule in numerous cases before it, including in cases involving large drug conspiracies and pain clinics.  United States v. Higdon, 68 F. Supp. 3d 807, 813 (E.D. Tenn. Dec. 17, 2014) (Shirley, MJ); United States v. Kincaid, et al, No. 3:10-CR-160, 2013 WL 5488524, *3 (E.D. Tenn. Oct. 2, 2013) (Varlan, J.) (holding denial of identity of unindicted coconspirators by Magistrate Judge Guyton was not clearly erroneous); United States v. Bozeman & Qureshi, No. 3:11-CR-129, 2012 WL 1071207, *3 (E.D. Tenn. Mar. 29, 2012) (Shirley, MJ); United States v. Bussell, et al, No. 3:10-CR-159, 2011 WL 5877079, *8 (E.D. Tenn. Nov. 23, 2011) (Shirley, MJ).  The Government argues that the instant request is

tantamount to a request for a list of the Government's witnesses, to which the Defendants are not entitled.

At the November 16 hearing, Mr. Eldridge acknowledged the Sixth Circuit precedent on this issue but argued that, in the instant case, fundamental fairness requires an exception to be made. He stated that unlike in the Kincaid case, in which the potential pool of unindicted coconspirators was limited to the fifty-five BPTC patients whose medical files were seized pursuant to a search warrant, here the Government has stated that there are 1000 potential witnesses. He argued that having to prepare to meet all of these witnesses leaves the Defendants with no way to meaningfully defend this case. Mr. Eldridge agreed with the Court that he was seeking the names of those unindicted coconspirators who will testify for the Government, although he stated that knowing a patient is a coconspirator would be helpful.

In the instant case, the Court finds that the Government has already identified the universe of unindicted coconspirators. The Defendants are aware of the identities of the clinic owners and employees, some of whom testified in the trial of Sandra and Randy Kincaid, Wendi Henry, and Dustin Morgan, whose charges arose out of the operation of this same pain clinic. Additionally, the Government has designated 915 BPTC patients from whom it will draw its witnesses at trial. The Defendants know not only the identities of these patients but the contents of their medical files. Thus, the Court finds that the Government has already provided the information requested by the Defendants, and the Defendant's Joint Motion to Require the Identification of Known but Unindicted Alleged Coconspirators [**Doc. 94**] is **DENIED as moot**.

The Court observes that at the heart of the Defendants' request for the identity of unindicted coconspirators is the desire for the Government to narrow that universe of

4

coconspirators to the number who will actually testify at trial. In this regard, the undersigned has already denied [Doc. 117] the Defendants' motion for the Court to order the Government to provide a witness list thirty days before trial. In its Memorandum and Order of July 29, 2015, the undersigned agreed that compelling reasons exist for requiring the Government to disclose its witnesses: The Defendants have not been charged with acting violently, the Defendants have no criminal history, the case is unusually complex and difficult, and disclosure would expedite the trial. However, the Court found that the reasons arguing against disclosure of a witness list outweighed the reasons for disclosure. The former BPTC patients who make up the bulk of the potential witnesses are particularly reluctant to testify and are more subject to intimidation than the typical witness because their testimony will likely implicate them in crimes. The Government has identified which patients with whom each Defendant is alleged to have met and prescribed controlled substances. Finally, the Court has granted several lengthy trial continuances and funded investigative services for the Defendants, in order to enable them to prepare to meet the evidence against them. To the extent that the instant motion is a request for the Court to reconsider its earlier ruling denying them a witness list, the Court arrives at the same ruling and declines to order the Government to disclose a witness list in this case. However, the Court "continues to strongly encourage the Government to disclose Jencks Act materials—and in this case, the identities of its actual witnesses—as soon as possible and well before the testimony of those witnesses at trial. [See Order on Discovery and Scheduling, Doc. 8, ¶O]" [Doc. 117, p. 20]

## B. Identification of Confidential Informants [Doc. 96]

Pursuant to <u>Roviaro v. United States</u>, 353 U.S. 53 (1957), the Defendants ask the Court to order the Government to disclose the names and addresses of confidential informants. They contend that the discovery in this case reveals that evidence of the alleged conspiracy was gleaned from confidential informants, who claim to have interacted with the Defendants in order to obtain prescriptions. The Defendants argue that the identities of these confidential informants must be disclosed because they were active participants and central witnesses to the alleged crimes. According to the Defendants, the allegations call the Defendants' medical decisions into question, and the patients, some of whom were deliberately deceiving the Defendants in order to get controlled substances, are the only witnesses to the alleged crimes. Thus, the Defendants argue that disclosure is necessary to challenge the reliability of the confidential informants and potentially to raise an entrapment defense.

The Government responds [Doc. 122] that it holds a privilege not to disclose the identity or location of confidential informants, unless the Defendants can show that disclosure is essential to a fair trial. It observes that in balancing the Government's privilege with the Defendant's need for the information, the Court must consider the danger to the informant and whether the informer's testimony would be beneficial to the Defendants. The Government contends that it has disclosed the names of all customers of BPTC of which it is aware.

At the November 16 hearing, AUSA Dale stated that the Government has already disclosed the confidential informants mentioned in the affidavit supporting the search warrant for BPTC. Defense counsel argued that the Defendants did not know the identity of a confidential informant who went to BPTC in August or September of 2009 and got a prescription. Agent Louden, who is the case agent for this case, told AUSA Dale that a third confidential source was used in the investigation of this case but did not testify at the Kincaids' trial. AUSA Dale stated

that he would determine who this confidential source is and disclose his or her identity to the Defendants. The Court ordered the Government to disclose this confidential source within ten (10) days of the hearing.

As a general rule, the government is not required to disclose the names of its witnesses before trial. See United States v. Perkins, 994 F.2d 1184, 1190 (6th Cir.), cert. denied, 510 U.S. 903 (1993); United States v. McCullah, 745 F.2d 350, 353 (6th Cir. 1984); see also United States v. Dark, 597 F.2d 1097, 1099 (6th Cir.), cert. denied, 444 U.S. 927 (1979). With regard to the identities of confidential informants, the Supreme Court has recognized what has become known as the informer's privilege:

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

Roviaro v. United States, 353 U.S. 53, 59 (1957) (citations omitted). The informer's privilege is limited by the requirement that criminal trials be fundamentally fair. Id. at 60. In other words, this privilege must yield when the informant's identity is "relevant and helpful to the defense of an accused" or "essential to a fair determination of a cause." Id. at 60-61.

Whether the informer's privilege will be applied is subject to a case-by-case balancing of "the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. at 62. In performing this balancing, the court should consider, among other factors, the charges, the potential defenses, and the significance of the informer's testimony. Id.

7

Also relevant to the Court's balancing inquiry is the informant's degree of involvement in the alleged offenses.  United States v. Lloyd, 400 F.2d 414, 416 (6th Cir. 1968); United States v. Sharp, 778 F.2d 1182, 1186 n.5 (6th Cir. 1985).  Disclosure is usually required when an informant is an "active participant in the events underlying the defendant's potential criminal liability" and is usually not required when the informant is a "mere tipster or introducer[.]" Sharp, 778 F.2d at 1186 n.5.  The fact that an informant is the only other person with knowledge about a drug transaction weighs in favor of disclosure.  See Roviaro, 353 U.S. at 64 (observing that the government's informant and the defendant were the sole participants in the transaction and that the "informer was the only witness in a position to amplify or contradict the testimony of government witnesses").  Finally, danger to the life of the informant is entitled to significant weight in the balance.  United States v. Jackson, 990 F.2d 251, 255 (6th Cir. 1993).

        In the instant case, the Defendant seeks to learn the identities of confidential informants to whom the Defendants allegedly prescribed controlled substances without a legitimate medical purpose.  At the November 16 hearing, the Government stated that it had already disclosed two confidential informants to the Defendants and agreed to disclose the third. The Government did not raise any danger to the informants.  The Court found that the balance tips in favor of disclosure.   The Defendants are entitled to the identities of the confidential informants, as eyewitness participants in the alleged transactions of prescriptions for controlled substances, and the Government has raised no specific danger to these individuals.  Accordingly, the Court ordered the Government to disclose the third confidential informant within ten (10) days.  The Court here documents that the Defendants' Joint Motion for Disclosure of the Confidential Informant(s) [**Doc. 96**] **is GRANTED** with regard to the three confidential informants in this case.

8

## C. Promises of Immunity, Leniency, or Preferred Treatment [Doc. 141]

The Defendants move the Court to order the Government to provide the existence and substance of promises of immunity, leniency, or preferred treatment made to Government witnesses. They argue that the Government has a constitutional obligation to disclose promises of immunity or consideration or any communication that might cause a witness to testify in the Government's favor out of fear or interest in self-preservation. The Government responds [Doc. 147] that it is aware of its obligation to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972), and that it will comply with this obligation at the appropriate time. Thus, it argues that no further compulsion is necessary and that the motion should be denied.

The Supreme Court has held that the government violates due process when it withholds from the defendant favorable evidence that is "material either to guilt or punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). Favorable evidence includes evidence tending to impeach a government witness, including plea agreements and promises of immunity. See Giglio, 405 U.S. at 154-55. In the instant case, the Court's Order on Discovery and Scheduling addresses the Government's obligation in this regard:

> The government shall reveal to the defendant and permit inspection and copying of all information and material known to the government which may be favorable to the defendant on the issues of guilt or punishment within the scope of Brady v. Maryland, 373 U.S. 83 (1963), United States v. Agurs, 427 U.S. 97 (1976) (exculpatory evidence), and United States v. Bagley, 473 U.S. 667 (1985) (impeachment evidence). Timing of such disclosure is governed by United States v. Presser, 844 F.2d 1275 (6th Cir. 1988).

[Doc. 8, ¶E] Thus, the Court finds that it has already ordered the Government to turn over materials within the scope of Giglio.

The Defendant's motion for disclosure of impeachment evidence [**Doc. 141**] is **DENIED as moot** because the Court has already ordered the relief requested. Although our appellate court has held that the Government does not have to disclose impeachment evidence until after the witness's testimony at trial, Presser, 844 F.2d at 1285, the undersigned *strongly encourages* the early disclosure of such evidence in the instant case. Given the nature of this case, the volume of discovery, and the large number of potential witnesses, the Court finds that disclosure of impeachment evidence relating to Government witnesses at least *two weeks* before trial would further the ends of justice.

## D. Potentially Exculpatory Evidence [Doc. 148]

The Defendants have moved to compel the Government to disclose (1) the March 12, 2014 statement of Heather Morgan, (2) a copy of the search warrant and supporting affidavit for the search of the home of Gary and Charlotte Dennison, and (3) all electronic data seized during the December 14, 2010 search of BPTC and the homes of Randy and Sandra Kincaid. They argue that these documents and data contain evidence on the creation, maintenance, storage, and movement of BPTC patient medical files, which is relevant and potentially exculpatory. The Defendants contend that they have requested this information from the Government on two occasions, but the Government has refused to disclose this evidence, contending that it is irrelevant. The Defendants ask the Court to require disclosure pursuant to the Court's Order on Discovery and Scheduling [Doc. 8]; Rule 16 of the Federal Rules of Criminal Procedure; Brady v. Maryland, 373 U.S. 83 (1963); United States v. Agurs, 427 U.S. 97 (1976); and United States v. Bagley, 473 U.S. 667 (1985).

At the November 16 hearing, Mr. Wojcik informed the Court that the parties had largely resolved the request to compel evidence. He said that the Government had agreed to disclose Heather Morgan's March 12, 2014 statement and the search warrant and affidavit for the search of the Dennison residence. However, he said the Government continues to decline to disclose the electronic data from BPTC and the Kincaids, because the Government contends that there is nothing useful in this data and the Government does not intend to use any of this data. AUSA Dale stated that he is unaware of any relevant or exculpatory information contained in this electronic data. He agreed to speak with the investigating agent to confirm that this is the case. He also asked the Court to unseal the search warrant and affidavit for the Dennison residence.[2]

The Court held that the Defendants were withdrawing the motion to compel at this time, because the requested evidence had been provided, was not relevant, or would not be used. In this regard, the Court observes that the Defendants have had the transcript of the trial of the Kincaids, Wendi Henry, and Dustin Morgan for many months and, thus, are aware if any electronic or computer data was used to show that these defendants created or altered the BPTC patient files. The Defendants' Joint Motion to Compel [**Doc. 148**] is **WITHDRAWN**, without prejudice to refile with regard to the electronic data, if appropriate and necessary.

## II.     EXCLUSION OF EVIDENCE [Doc. 90]

The Defendants move the Court to prohibit the Government from introducing 2000 BPTC patient files and the DOMEX report, a summary based upon these files, because their admission violates the Defendants' right to confront their accusers. They argue that the patient

---

[2] At the hearing, the Court **GRANTED** the Government's oral motion to unseal the search warrant and supporting affidavit in case number 3:14-MJ-2023.

files are out of court statements offered for truth, that they are testimonial, and that they are not subject to cross-examination. They explain that the Government seeks to introduce these files to prove that the Defendants issued prescriptions without a legitimate purpose. They maintain that such evidence is testimonial hearsay, which cannot be admitted without the live testimony of the patients. Alternatively, the Defendants contend that the files cannot be admitted under the business records exception to the prohibition of hearsay evidence because they are unreliable.

The Government responds [Doc. 119] that the BPTC patient files are not testimonial hearsay. Alternatively, it argues that if the files are deemed to be hearsay, they are admissible under exceptions to the prohibition of hearsay as statements made to receive medical treatment pursuant to Federal Rule of Evidence 803(4) and as business records under Federal Rule of Evidence 803(6). It maintains that the DOMEX report is a summary of the patient files and is admissible under Federal Rule of Evidence 1006. The Government contends that admission of the files and the report does not violate the Confrontation Clause.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" "In Crawford[ v. Washington, 541 U.S. 36, 40 (2004)], the Supreme Court announced a new standard for assessing whether hearsay statements, *otherwise admissible under principles of evidence,* violate the mandate of the Confrontation Clause." United States v. Mooneyham, 473 F.3d 280, 286 (6th Cir. 2007) (emphasis added). With regard to "testimonial statements," which are those statements that the declarant should have anticipated would be used to investigate or prosecute a crime, United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004), only confrontation in the form of cross-examination will fulfill the defendant's Sixth Amendment right. Crawford, 541 U.S. at 68-69. The Defendants argue that admission of the BPTC patient

files violates their right to confront the patients and cross-examine them about the contents of the files.

The first question that the Court must determine is whether the BPTC files are otherwise admissible under the rules of evidence, aside from the confrontation question. The Government argues first that the files are not hearsay because they are not offered to prove the truth of the matter asserted, i.e. that a particular patient actually had a particular medical condition. It maintains that, instead, the patient files will be offered to prove the Defendants were acting outside any accepted course of medical practice. In this regard, the Government contends that "statements offered to prove the falsity of the matter asserted are not hearsay." United States v. Hathaway, 798 F.2d 902, 905 (6th Cir. 1986). The Government also asserts that the statements of the various medical providers in the patient files are the statements of coconspirators made in furtherance of the conspiracy under Federal Rule of Evidence 801(d)(2)(e).

The Court finds that the patient files would be offered to prove the truth of some statements asserted therein, such as that a particular patient was seen by a particular BPTC medical provider; the medical tests or procedures, if any, that were performed on the patient; that the provider prescribed certain controlled substances for that patient; and the dosage prescribed. Thus, the Court finds that the patient medical files would be used, at least in part,[3] to prove the

_____

[3] The Court finds that other statements in the files would be offered to prove neither the truth nor the falsity of the matter asserted but to prove the reasonableness or the unreasonableness of the Defendants' actions. For example, the Government might use a particular file to show the information the Defendant knew about that patient at the time the Defendant prescribed controlled substances, such as the medical condition(s) claimed by the patient, the patient's vital signs, the patient's complaints at the examination (if one occurred), the results of any drug testing, etc. This information would not be used to prove whether the patient actually had a particular diagnoses but, instead, to ascertain whether the Defendant prescribed medication for a legitimate medical purpose. "The significance [of such statements] lies entirely in the fact that

truth of the contents asserted therein.  However, the Court agrees that information recorded in the file by the Defendant him or herself would be excluded from the prohibition against hearsay as a party admission, Fed. R. Evid. 801(d)(2)(A), and information recorded by another medical provider would be excluded as a coconspirator statement, Fed. R. Evid. 801(d)(2)(E).[4]

The Government argues that if the Court finds that the medical files contain hearsay, they would still be admissible under two well-established hearsay exceptions.  The Government argues that portions of the files are admissible under Rule 803(4) of the Federal Rules of evidence as statements "made for—and . . . reasonably pertinent to—medical diagnosis or treatment; and describ[ing] medical history; past or present symptoms or sensations; their inception; or their general cause."  The primary inquiry in applying Rule 803(4) is whether the declarant made his or her statements for the purpose of receiving a medical diagnosis or treatment.  See United States v. Kappell, 418 F.3d 550, 556-57 (6th Cir. 2005).  The Defendants "concede that the medical records' initial purpose was to document the treatment of patients[.]" [Doc. 91, p.6]    Court agrees that many of the statements contained within the BPTC patient medical files would be admissible under Rule 803(4).

The Government also argues that the BPTC patient files are admissible under Rule 803(6) of the Federal Rules of Evidence as business records made by a person with knowledge in the course of a regularly conducted business activity.  The Government contends that the files are admissible under this rule regardless of whether they are considered to be legitimate medical

---

the words were spoken," and, thus, such statements are not hearsay under Rule 801(c) of the Federal Rules of Evidence.  Hathaway, 798 F.2d at 905.

[4] Assuming the Government can prove that a conspiracy existed and that the Defendants were participants in the conspiracy.  See United States v. Vinson, 606 F.2d 149, 152 (6th Cir. 1979), cert. denied, 444 U.S. 1074 (1980).

records (as the Government presumes the Defendants will argue) or merely the "drug ledgers" kept in furtherance of the drug conspiracy (as the Government contends). Rule 803(6) excludes from the prohibition of hearsay a "record of an act, event, condition, opinion, or diagnosis if:"

     (A) the record was made at or near the time by—or from information transmitted—by someone with knowledge;

     (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

     (C) making of the record was a regular practice of that activity;

     (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

     (E) the opponent does not show that the source of information or the method of circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). The Government contends that at trial, it will present the testimony of a witness who can attest to the recordkeeping practices at BPTC in fulfillment of subsection (D).

     Although the Defendants concede that the purpose of keeping patient files at BPTC was to document the treatment of patients, they argue that the circumstances of the preparation of many of the patient files indicate that they are unreliable. The Defendants present law enforcement summaries [Docs. 91-1 & 91-2] of interviews with Tonya Overholt, a BPTC employee and patient, and Rheanan Williams, a BPTC patient, both of whom stated that some BPTC patients presented false test results or physician notes in order to get controlled substances at the clinic. Ms. Overholt also stated [Doc. 91-3] that clinic owner Sandra Kincaid wrote prescriptions for controlled substances and forged the medical provider's name on the prescription. The implication of this evidence is that at least ten of the BPTC patient files

contain fraudulent MRI reports.  The Defendants also argue that the Government cannot prove the "chain of custody" of the BPTC patient files because after BPTC closed following the execution of a search warrant in December 2010, the files were stored at the Kincaids' home and later, when the Kincaids were convicted and incarcerated, the files were stored at the homes of relatives of Sandra Kincaid.  The Defendants contend that the unreliability of the patient files will be compounded when the Government's experts use the patient files to give their opinion of whether the Defendants acted with a legitimate medical purpose with no opportunity for the Defendants to confront the underlying raw data.

The Government argues that the reliability of the contents of the files goes to the weight the jury should give this evidence, not to its admissibility.   The Government points to Hunt v. Woods, Nos. 94–3748, 94–4197, 1996 WL 8037 (6th Cir. Jan. 9, 1996), in which the Court upheld the admission of medical records over the defendant's objection that they were untrustworthy.  There, as here, the defendant did not contest the fact that the medical records were records kept in the ordinary course of the physician's medical practice.  Id. at *2.

> Instead, defendant cites the following factors as indicia of
> untrustworthiness: (1) the medical records contain references both
> to the injuries plaintiff suffered in the April 1991 accident, and a
> preceding injury that plaintiff suffered in an unrelated accident; (2)
> some of the medical records were missing as a result of a break-in
> and vandalism at the doctor's office; and (3) Dr. Schenz stated that
> he was "a lousy record keeper." While these factors may diminish
> the persuasive value of Dr. Schenz's medical records, they do not
> render them so untrustworthy as to exclude them from the hearsay
> exception of Fed. R. Evid. 803(6). Defendant's arguments go to the
> weight of the evidence, not the admissibility.

Id.

In the instant case, the Defendants raise the following factors as indicia of untrustworthiness: (1) BPTC patients presented false MRI results and treatment notes from referring doctors to non-medical staff (or the staff created these documents for patients) and the non-medical staff knowingly placed these false documents into some fraction of the files; (2) clinic owner Sandra Kincaid forged prescriptions, copies of which were retained in some fraction of the files; and (3) the BPTC patient files were stored for over three years in the homes of the Kincaids and the Kincaids' relatives. Although there is no evidence before the Court that the files were altered during the time that they were stored by the Kincaids and their relatives, the Court finds that the Defendants have shown that "the source of information or the method of circumstances of preparation indicate a lack of trustworthiness" in some aspects of some of the BPTC files. Fed. R. Evid. 903(6)(E). The Court finds that the actual alteration of files is a more serious allegation than the negligence raised in Hunt. See Hathaway, 798 F.2d at 907 (contrasting evidence that records were missing or unavailable with "specific and credible evidence of untrustworthiness"). Accordingly, the Court questions whether the BPTC patient files could properly be admitted under Rule 803(6). However, even if the patient files are not admissible under the business records exception, the Court finds that they are admissible as party admissions, the statements of coconspirators, and statements made for the purpose of medical treatment.

The Government contends the DOMEX report is admissible under Federal Rule of Evidence 1006. A party may introduce a summary "to prove the content of voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. The party offering the summary must make the original summarized documents available to the other parties "at a reasonable time and place." Id. In the instant case, the Government made the DOMEX report

and the BPTC files available to the Defendants in discovery. The Court finds that the DOMEX report is admissible under Federal Rule of Evidence 1006.

Accordingly, it appears to the undersigned that the BPTC patient files will be admissible under Rules 801(d)(A) and -(E) and 803(4) and the DOMEX report will be admissible under Rule 1006. The undersigned adds the caveat that the District Judge is the final arbiter of the admissibility of evidence, a determination that is best made in the context of the trial.

Assuming that Judge Reeves agrees that the BPTC medical files and the DOMEX report are admissible, the Defendants contend that their admission violates the Confrontation Clause because they are testimonial hearsay. The Supreme Court in <u>Crawford</u> held that "testimonial, out-of-court statements offered against the accused to establish the truth of the matter asserted may only be admitted where the declarant is unavailable and where the defendant has had a prior opportunity to cross-examine the declarant." <u>Cromer</u>, 389 F.3d at 671. Although the Supreme Court did not define testimonial statements, it provided that "at a minimum [the term applies] to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." <u>Crawford</u>, 541 U.S. at 68; <u>Cromer</u>, 389 at 672. Our appellate court further refined the meaning of testimonial statement as follows:

> The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.

<u>Id.</u> at 675.

Applying this definition to the instant case, the BPTC patient files are not testimonial statements. The declarants in the BPTC patient files—the patients and the medical caregivers—did not make the statements contained therein for the purpose of one day aiding in their own prosecution for a drug conspiracy. In this regard, the Sixth Circuit has found that the admission of medical records prepared by non-testifying physicians did not violate the Confrontation Clause because the "physicians involved were not preparing their reports in the context of a criminal prosecution, and had no reason to 'anticipate [their] statement[s] being used against [Garner] in investigating and prosecuting the crime.'" United States v. Garner, 148 F. App'x 269, 274 (6th Cir. 2005) (quoting Cromer, 389 F.3d at 675) (alterations in Garner). Likewise, the medical providers and employees of BPTC created the patient files at or near the time of the patients' visits and not in the context of a criminal prosecution.[5]

The Defendants raise Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), and Bullcoming v. New Mexico, 564 U.S. 647 (2011), to argue that the patient files are testimonial in nature. These cases deal with scientific reports which were held to be inadmissible as substantive evidence against a criminal defendant unless the analyst preparing the report was subject to confrontation. Bullcoming, 564 U.S. at 665-66 (holding that Confrontation Clause requires analyst who conducted blood alcohol testing to testify, not surrogate analyst); Melendez-Diaz, 557 U.S. at 311-12 (holding that defendant entitled to be confronted with the

---

[5] Moreover, to the extent that the medical providers and patients at BPTC are viewed as coconspirators acting in concert to distribute controlled substances for profit, rather than treatment, "'[a] statement made by one participant in a criminal enterprise to another, intended to further the enterprise, is not testimonial.'" Cromer, 389 F.3d at 673 (quoting Richard D. Friedman, "Confrontation: The Search for Basic Principles," 86 Geo. L.J. 1011, 1042-43 (1998)). The admission of coconspirator statements does not violate the Confrontation Clause, because "a reasonable person in the position of a co-conspirator making a statement in the course and furtherance of a conspiracy would not anticipate his statements being used against the accused in investigating and prosecuting the crime." United States v. Martinez, 430 F.3d 317, 329 (6th Cir. 2005).

analyst, who performed chemical analysis of cocaine). However, the "forensic reports in Melendez-Diaz and Bullcoming ran afoul of the Confrontation Clause because they were the equivalent of affidavits made for the purpose of proving a particular criminal defendant's guilt." Williams v. Illinois, 132 S. Ct. 2221, 2225 (2012) (determining that a DNA profile from swab from rape victim was "not prepared for the primary purpose of accusing a targeted individual"). Melendez-Diaz and Bullcoming are distinct from the instant case because, as the Government argues, the employees and medical providers at BPTC did not maintain the patient files in order to prove their own guilt. Instead, they maintained these files to keep track of the treatment of the patients, whether for nefarious reasons (as "drug ledgers") or legitimate medical reasons remains to be proven at trial. The Court finds that the admission of the BPTC patient files do not violate the Confrontation Clause because they are not "testimonial statements." Accordingly, a summary based upon the patient files, such as the DOMEX report, is similarly not inadmissible as violating the Confrontation Clause.

The Defendants' Joint Motion to Exclude Unreliable Patient Files as Testimonial Hearsay in Violation of the Confrontation Clause [**Doc. 90**] is **DENIED**.

### III.     PRETRIAL ENRIGHT HEARING [Doc. 92]

Finally, the Defendants ask the Court to suppress the hearsay statements of alleged coconspirators or to grant a pretrial hearing in which the Government must prove by a preponderance of the evidence that a conspiracy existed, that the Defendants participated in the conspiracy, and that any statement is admissible against one of them. The Defendants argue that the existence of a conspiracy and their participation therein should be determined before trial in an Enright hearing to avoid prejudicing the jury with the statements of alleged coconspirators

before proof that these statements are properly admissible. In this regard, the Defendants also argue that improper admission of coconspirator statements violates their rights under the Confrontation Clause to confront the alleged coconspirator. They maintain that an <u>Enright</u> hearing is particularly important in this case because the discovery reveals no evidence that the Defendants had any knowledge of or ever participated in the conspiracy between the clinic owners, non-medical employees, and patients. They argue that to permit the jury to hear the statements of the Kincaids or the BPTC patients without first determining that the Defendants participated in a conspiracy with them would prejudice the jury with evidence of the Kincaid conspiracy and taint the jury's ability to independently evaluate the Defendants' conduct.

The Government asks [Doc. 120] that it be allowed to present coconspirator statements at trial subject to a later demonstration of their admissibility under the coconspirator exception to the hearsay rule. At the November 16 hearing, AUSA Dale argued that a pretrial hearing on the existence of and Defendants' connection to the conspiracy would be burdensome, time consuming, and a waste of resources. Also, the Government argues that the Defendants have failed to present any specific prejudice that warrants a departure from the Court's traditional policy of provisional admission.

The Federal Rules of Evidence require that for a statement of a coconspirator to be admissible non-hearsay, the statement must be "made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The Sixth Circuit has approved three potential procedures for resolving the admissibility of alleged coconspirator statements: (1) holding a pretrial hearing, (2) requiring at trial that the government present evidence of the conspiracy before presenting the coconspirator's statement, and (3) allowing the government to present the statement before proving the conspiracy at trial but instructing the jury that the

government must prove the conspiracy before it can consider the statement.  United States v. Vinson, 606 F.2d 149, 152-53 (6th Cir. 1979) (citing United States v. Enright, 579 F.2d 980 (6th Cir. 1978)).  The Defendants ask for the first of these options, a pretrial or Enright hearing.  The Court observes that it is the historical practice in this district to use the third of these options, which the Court will refer to as the provisional admission option.  The Defendants argue that a pretrial hearing is the most efficient way to protect their right to due process and to confront the witnesses against them.

Our Court of Appeals for the Sixth Circuit has observed that pretrial Enright hearings have the disadvantage of being "burdensome, time-consuming and uneconomic." Vinson, 606 F.2d at 152 (footnote omitted).  Nevertheless, "a trial judge, in the exercise of his discretion, may choose to order the proof in this manner if the circumstances warrant."  Id.  The decision of which of the Vinson options to use falls squarely within the district judge's sound discretion.  United States v. Robinson, 390 F.3d 853, 867 (6th Cir. 2004) (stating the decision is "the trial court's prerogative").  A change from the historical method is not warranted when the proponents of the pretrial hearing offer only "general and vague objections" that "demonstrate no specific prejudice" resulting from the use of the provisional admission option.  United States v. Martin, No. 3:07-CR-51, 2008 WL 152900, at *3 (E.D. Tenn. Jan. 14, 2008).

In the instant case, the Defendants argue that presenting the statements of the Kincaids or BPTC patients without showing that the Defendants participated in a conspiracy with the Kincaids or the BPTC patients would taint the jury with the evidence of the Kincaid conspiracy.   The Court finds that the Defendants' taint or spillover objection could be raised in every case in which a conspiracy is charged.  The Defendants essentially argue that if the Government fails to prove that they participated in a conspiracy with the clinic owners and

22

patients, then evidence of those individuals' statements would not be admissible under Rule 801(d)(2)(E). The Defendants argue they would be prejudiced by the admission of inadmissible evidence. The undersigned finds that the Defendants have failed to show that such prejudice is specifically or particularly likely in this case. Thus, the Defendants have not shown that the provisional admission option will cause them some specific prejudice.

The Court has considered the Defendants' arguments and finds no reason to depart from the traditional provisional admission approach in this case. Because the Defendants' motion relates directly to trial procedures and/or the admissibility of evidence at trial, the Court defers to the historical practice employed in this district of permitting the Government to present the statement before proving the conspiracy and then instructing the jury that the Government must prove the conspiracy before it can consider the statement. Accordingly, the Defendants' Joint Motion to Suppress Statements of Alleged Co-conspirator or in Alternative Motion for a *Enright* Hearing [**Doc. 92**] is **DENIED**.

## IV. CONCLUSION

Based upon the motions, briefs, arguments, and relevant case law, the Court **ORDERS** as follows:

(1) The Defendants' Joint Motion to Exclude Unreliable Patient Files as Testimonial Hearsay in Violation of the Confrontation Clause [**Doc. 90**] is **DENIED**;

(2) the Defendants' Joint Motion to Suppress Statements of Alleged Co-conspirator or in Alternative Motion for a *Enright* Hearing [**Doc. 92**] is **DENIED**;

(3) The Defendant's Joint Motion to Require the Identification of Known but Unindicted Alleged Coconspirators [**Doc. 94**] is

23

**DENIED as moot**.  The Government is ***strongly encouraged*** to disclose its witnesses to the Defendants well before the testimony of those witnesses at trial;

(4)  The Defendants' Joint Motion for Disclosure of the Confidential Informant(s) [**Doc. 96] is GRANTED** with regard to the three confidential informants raised at the November 16, 2015 hearing.  The Government was **ORDERED** to disclose the identity of the third confidential source to the Defendants within ten (10) days of the November 16 hearing;

(5)  The Defendants' Joint Motion to Compel Disclosure of the Existence and Substance of Promises of Immunity, Leniency, or Preferred Treatment [**Doc. 141**] is **DENIED as moot** because the Court has already ordered the requested relief in its Order on Discovery and Scheduling [**Doc. 8**].  The Government is ***strongly encouraged*** to provide the early disclosure of impeachment evidence at least ***two weeks*** before trial;

(6)  The Defendants' Joint Motion to Compel [**Doc. 148**] is **WITHDRAWN**, without prejudice to refile with regard to the electronic data, if appropriate and necessary.

**IT IS SO ORDERED.**

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge