UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| JAMES BRIAN JOYNER, | ) | |
| --- | --- | --- |
| Petitioner, | ) | |
| v. | ) | Case Nos. 3:14-CR-124 |
| | ) | 3:17-CV-487 |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Before the court is *pro se* petitioner James Brian Joyner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 482].[1] The United States has responded to the motion, objecting to Joyner's requested relief [Doc. 484]. For the reasons set forth herein, the court finds Joyner's § 2255 motion lacks merit and will be denied, and the case dismissed. Because Joyner is not entitled to relief under § 2255, no evidentiary hearing is necessary.

On May 31, 2016, Joyner entered a guilty plea to conspiracy to distribute Oxycodone, Morphine, Oxymorphone, and Alprazolam by writing illegal prescriptions. For approximately three months in 2010, Joyner was employed at the Breakthrough Pain Therapy Center in Maryville, Tennessee, as a licensed medical doctor. During this time,

---

[1] In accordance with Rule 4(b) of the Rules Governing § 2255 Proceedings in the United States District Courts (§ 2255 Rules), the Court has considered all of the pleadings and filings in Petitioner's motion. The Court has also considered all the files, records, transcripts, and correspondence relating to Petitioner's conviction. All citations to the record are found on the criminal docket in Case No. 3:14-CR-124.

1

he issued prescriptions to patients for narcotics without a legitimate medical purpose and outside the course of professional medical practice. Breakthrough was a pain clinic that issued prescriptions for scheduled narcotics to every patient despite the absence of any medical justification for the prescriptions. It operated from July 2009 until it was closed by law enforcement in December 2010. The owners of the clinic had no medical training and could not write prescriptions, so they employed various medical providers, including Joyner, to write prescriptions for patients.

Joyner was the medical provider for 530 patient visits. He prescribed medications and every patient he saw was prescribed a scheduled narcotic. In addition, Joyner provided his signature in a supervisory physician role for various files in which prescriptions were issued by nurse practitioners and physician assistants who were employed by the clinic.

The grand jury returned criminal charges against nine medical practitioners who had worked at the clinic, including Joyner. All were charged with conspiring to distribute controlled substances in violation of 21 U.S.C. § 841 and conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h).

Joyner, through counsel, negotiated a written plea agreement to plead guilty to the drug conspiracy, in exchange for dismissal of the money laundering count. Joyner stipulated that he had issued prescriptions for scheduled narcotics outside the usual course of professional practice and without a legitimate medical purpose. He also stipulated that the controlled substance quantities obtained through the illegal prescriptions he wrote had the marijuana equivalency of at least 6,661.07 kilograms of marijuana.

On November 17, 2016, the court sentenced Joyner to 70 months imprisonment, followed by 3 years of supervised release. Joyner did not appeal his conviction or sentence, and the judgment became final on December 1, 2016. Joyner filed a § 2255 motion on November 9, 2017. Joyner contends that his counsel was constitutionally ineffective in three respects: (1) for not alleging a violation of the Speedy Trial Act; (2) for allowing or inducing him to enter an involuntary guilty plea; and (3) for not objecting to the drug quantity attributed to him at sentencing. Joyner also claims that the government "suppressed inconsistent proffer statements, video recordings, fabricated and coached grand jury testimonies" in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).

To obtain relief pursuant to § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance, as measured by prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is

presumed to have provided effective assistance, and a petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003) A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy." *Strickland*, 466 U.S. at 689.

Second, a petitioner must demonstrate "a reasonable probability" that, but for counsel's acts or omissions, "the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a petitioner fails to prove that he sustained prejudice, the court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Further, the petitioner has the burden to establish that he is entitled to relief. *See Bevil v. United States*, No. 2:06-CR-52, 2010 WL 3239276, at *3 (E.D. Tenn. Aug. 16, 2010) (recognizing that "burden of proving ineffective assistance of counsel is on the petitioner"); *see also Douglas v. United States*, No. 2:05-cr-07, 2009 WL 2043882 at *3 (E.D. Tenn. July 2, 2009) (stating that "[w]hen a defendant files a § 2255 motion, he must set forth facts which entitle him to relief").

4

## I. Speedy Trial Act

Joyner argues that his counsel was ineffective for not moving to dismiss the indictment for violating the "70-day Speedy Trial statute of limitations." In support of his argument, Joyner states that he was employed with the pain clinic from April 30, 2010 until July 30, 2010. The indictment was returned by the grand jury on October 7, 2014, and defendant was not taken to trial until May 25, 2016, some 591 days later.[2]

The Speedy Trial Act generally requires a federal criminal trial to begin within seventy days after a defendant is charged or makes an initial appearance, but contains a detailed scheme under which certain specified periods of delay are not counted. *United States v. Brown,* 498 F.3d 523, 529 (6th Cir. 2007). As relevant here, the Speedy Trial Act deems excludable:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the bests interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). Here, Joyner's initial appearance was on October 16, 2014. At that time, his trial was scheduled for December 15, 2014, within the 70-day period. On November 13, 2014, Joyner and his co-defendants filed a joint motion to declare the case

---

[2] Joyner's plea agreement was filed with the court on May 25, 2016 and he entered his plea of guilty to Count 1 of the indictment on May 31, 2016. There was no trial.

5

complex and to continue the trial, based in part on the volume of discovery in the case. The case was continued to October 6, 2015. The court determined that the ends of justice would be served by a continuance. Citing 18 U.S.C. § 3161(h)(7)(A), the court specifically found that "all time between the filing of the motion and the new trial date is fully excludable time under the Speedy Trial Act." On July 7, 2015, the defendants again jointly moved to continue the trial based on: (1) voluminous discovery and recently produced discovery; (2) investigation could not be completed by defense counsel in time for sufficient use at trial; (3) the "huge" number of potential witnesses (including expert witnesses); (4) the government planned to bring a superseding indictment; and (5) the parties' need to litigate additional pretrial motions. The parties agreed on a date and trial was continued to June 14, 2016. Again, the court set forth the reasons for granting the continuance under 18 U.S.C. § 3161(h)(7)(A). Thereafter, Joyner decided to enter an unconditional guilty plea, waiving his right to litigate any Speedy Trial Act claim. 18 U.S.C. § 3162(a)(2). A defendant who pleads guilty may not raise challenges based on denial of due process rights to a speedy trial. *United States v. Dossie,* 188 Fed. Appx. 339, 345 (6th Cir. 2006).

Because there was no violation of the Speedy Trial Act, Joyner's counsel did not run afoul of either prong of the ineffective assistance of counsel standard articulated in *Strickland.* In addition, because there was no underlying violation of the Speedy Trial Act, Joyner was not prejudiced by the delay to allow the parties additional time to prepare for trial.

**II. Guilty Plea**

Joyner next argues that his guilty plea was involuntary because counsel failed to conduct an adequate investigation and interview alibi witnesses such as Sandy Kincaid, Dr. Thomas and Walter Blankenship "all of whom would have testified that [Joyner] had no knowledge of their criminal conduct at the clinic."[3] Joyner's brief argument is insufficient to state a valid claim. He states in conclusory fashion that these witnesses would have established his innocence, but states no facts regarding the nature of the witnesses' testimony. Rather than provide supporting facts, Joyner asks the court to speculate that the testimony of these witnesses would have demonstrated his innocence. Conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255. *Jefferson v. United States,* 730 F.3d 537, 547 (6th Cir. 2013). Joyner has not demonstrated that his counsel was deficient for failing to interview these witnesses or that he was prejudiced as a result.

To show prejudice in a guilty plea context, Joyner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial." *Hodges v. Colson,* 727 F.3d 517, 534 (6th Cir. 2013). When evaluating prejudice, the court generally must consider the "totality of the evidence." *Strickland,* 466 U.S. at 695. Joyner cannot make a showing of prejudice under the facts in this case. The record shows that the clinic lacked basic medical equipment, no medical examinations were performed, patients were required to pay cash

---

[3] Sandy Kincaid went to trial in October 2013 and was found guilty. Dr. Thomas and Walter Blankenship entered guilty pleas to Count 1 of the indictment. Blankenship testified at Joyner's sentencing hearing.

in advance of seeing a medical practitioner, and every patient was prescribed a scheduled narcotic. During the plea colloquy, Joyner said he had sufficient time to discuss the case with counsel; he was satisfied with his counsel's representation; counsel had explained to him the charged offenses, their elements, any defenses, his sentencing exposure, and the terms and conditions of the plea agreement. Joyner also stipulated that the factual summary in the written plea agreement was correct, and that he was pleading guilty because he was, in fact, guilty. Joyner stipulated that he issued prescriptions to patients for scheduled narcotics without a legitimate medical purpose and outside the course of professional practice and by providing his signature in a supervisory physician role for files in which prescriptions were issued by nurse practitioners and physician assistants employed by the clinic. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977). Based on these admitted facts, a jury could infer Joyner's knowledge that the clinic was not a legitimate medical practice, and that Joyner wrote prescriptions to patients for narcotics without a legitimate medical purpose. Thus, the court finds that Joyner has not established that his counsel's investigation was inadequate or that his plea was unknowing or involuntary as a result.

### III. Drug Quantity

Joyner next argues his counsel should have objected to the drug quantity attributed to him at sentencing and he should have received a lighter sentence. However, the quantity of drugs attributed to defendant was set out in his written plea agreement wherein Joyner admitted to prescribing narcotic medications for 530 patients. For sentencing purposes,

Joyner stipulated that the drug quantities he prescribed had the marijuana equivalency of 6,661.07 kilograms of marijuana, resulting in a base offense level 32. Because Joyner agreed to the drug quantity, counsel had no basis on which to object to the drug quantity or the base offense level at sentencing. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *Chapman v. United States,* 74 Fed. Appx. 590, 593 (6th Cir. 2003).

### IV. Prosecutorial Misconduct

Last, Joyner argues the government "suppressed inconsistent proffer statements, video recordings, fabricated and coached grand jury testimonies," and that the suppressed evidence was significant and therefore material. Other than this conclusory allegation, Joyner provides no supporting details or context for his claim. The government responds that Joyner has not specifically identified the evidence in question; therefore, his claim in inadequately developed and should be dismissed.

The Supreme Court held in *Brady v. Maryland,* 373 U.S. 83 (1963), that the government must provide defendants with material, exculpatory evidence in its possession. Inculpatory evidence, however, is not covered by *Brady. See Montgomery v. Bobby,* 654 F.3d 668, 678 (6th Cir. 2011). In order to establish a violation of *Brady,* a petitioner must show that the following three requirements are met: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Id.*

Here, Joyner's claim is purely conclusory and otherwise is without any factual support. Generally, courts have held that "conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *Jefferson,* 730 F.3d at 547; *Milburn v. United States,* 2013 WL 1120856 at *1 (E.D.Tenn. Mar. 18, 2013) (motion may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts and thereby fails to state a claim cognizable under § 2255). Joyner bears the burden of articulating sufficient facts to state a claim for relief under § 2255. *Douglas,* 2009 WL at *3. Joyner has failed to meet this burden and his claim based upon a *Brady* violation will be denied.

## Conclusion

Joyner is not entitled to relief under § 2255, a hearing is unnecessary in this case, and a Judgment will enter **DENYING** the Motion [Doc. 482].

_____
**CHIEF UNITED STATES DISTRICT JUDGE**